# EXHIBIT 3

# NOVATION AGREEMENT

THIS NOVATION AGREEMENT (hereinafter the "**Agreement**") is made on 12 April 2018,

AMONG:

(1) **THAI NIPPON RUBBER INDUSTRY PUBLIC COMPANY LIMITED**, a public company duly registered and existing under the laws of Thailand having its registered office at 1 Charoenrat Road, Thung Wat Don, Sathon Bangkok 10120 (hereinafter referred to as "**TNR**");

(2) **UNITED MEDICAL DEVICES, LLC**, a private company duly registered and existing under the laws of California having its registered office at [1901 Avenue of the stars, Suite 470 Los Angeles, CA 90067] (hereinafter referred to as the "**UMD**"); and

(3) **PRODUCTS LICENSING LLC**, a private company duly registered and existing under the laws of Delaware having its registered office at 9346 Civic Center Drive, Suite 200, Beverly Hills, CA 90210 (hereinafter referred to as the "**Playboy**"),

(each hereinafter referred to as a "**Party**", and collectively referred to as the "**Parties**").

**WHEREAS:**

(A) UMD has entered into the product license agreement between itself and Playboy dated 1 April 2010, as amended (collectively hereinafter referred to as the "**Product License Agreement**").

(B) Pursuant to the Product License Agreement, Playboy has granted to UMD a license to use the Playboy Properties (as defined in the Product License Agreement) in the design, manufacture, advertising, promotion, sale and distribution of the Products (as defined below).

(C) UMD agreed to assign its rights and obligations under the Product License Agreement to TNR or TNR's designated entity, and in consideration for UMD's due performance of its obligations hereunder TNR agreed to acquire all rights and obligations under the Product License Agreement from UMD (hereinafter referred to as the "**Transaction**"), in accordance with the provisions of the sale and purchase agreement entered into between TNR and UMD dated 30 March 2018 (hereinafter referred to as the "**Sale and Purchase Agreement**").

(D) Playboy has acknowledged the potential Transaction and provided the letter of acknowledgement to UMD dated 22 February 2018. However, the Transaction remains subject to a prior written consent of Playboy pursuant to the Product License Agreement.

(E) The Parties desire to effect a novation of the Product License Agreement, such that TNR is assigned and accepts all the rights and obligations of UMD under the Product License Agreement under the terms and conditions of this Agreement.

**THEREFORE**, the Parties agree as follows:

1. **INTERPRETATION AND DEFINITIONS**

1.1 **Definitions**

In this Agreement, the following defined terms have the following meanings:

1

"**Confidential Information**" shall have the meaning as described in Clause 6.1.

"**Effective Date**" means the date of this Agreement.

"**Novated Rights and Obligations**" means all rights, titles and interest, and all obligations and duties, present that are still valid and outstanding and future of UMD under the Product License Agreement.

"**Products**" means merchandise bearing and distributed in connection with the Playboy Properties.

"**Product License Agreement**" shall have the meaning as described in Recital (A).

"**Sale and Purchase Agreement**" shall have the meaning as described in Recital (C).

"**Transaction**" shall have the meaning as described in Recital (C).

1.2   <u>Interpretation</u>

In this Agreement, subject to any express contrary indication:

(a)   words (including the definitions in <u>Clause 1.1</u>) importing the singular shall include the plural and *vice versa*;

(b)   any reference to any gender shall include the other genders;

(c)   any reference to a person shall be construed as including a reference to its successors, permitted transferees and permitted assignees;

(d)   any reference to this Agreement or any other agreement or document shall be construed as a reference to that agreement or document as it may have been, or may from time to time be, amended, varied, novated, replaced, restated or supplemented;

(e)   any reference to a Clause shall be construed as a reference to a clause of this Agreement;

(f)   any reference to a Schedule or an Annex shall be construed as a reference to a schedule or an annex to this Agreement; and

(g)   the headings to the Clauses or other provisions of this Agreement are for ease of reference only and are not to be taken into account in the interpretation of this Agreement or its provisions.

2.   **EFFECTIVENESS**

This Agreement shall become effective and binding on the Parties hereto on the Effective Date.

3.   **CONSIDERATION**

Consideration for the novation of the Product License Agreement shall be paid by TNR directly to Playboy to an account to be designated by Playboy as follows:

(a)   U.S.$500,000 (five percent (5%) of the First Payment as defined in the Sale and Purchase Agreement) simultaneously with payment to UMD of the remaining portion of the First Payment; and

  (b) U.S.$250,000 (five percent (5%) of the Second Payment as defined in the Sale and Purchase Agreement) simultaneously with payment to UMD of the remaining portion of the Second Payment.

TNR and UMD acknowledge and agree that U.S.$15,000,000 (the sum of the First Payment and the Second Payment as such terms are defined in the Sale and Purchase Agreement) are the sole consideration and/or value that TNR is paying or providing to UMD for the Transaction and/or the Assigned Rights as defined in the Sale and Purchase Agreement.

**4.**   **NOVATION**

**4.1**   All terms and conditions of the Product License Agreement shall be unaffected except as expressly provided herein.

**4.2**   The Parties agree to a novation of the Product License Agreement by substitution of UMD thereunder with TNR. With effect on the Effective Date:

  (a) TNR shall replace UMD under the Product License Agreement, whereby the Novated Rights and Obligations to TNR shall be assumed by TNR. Playboy and TNR agrees to be bound by and shall comply with the Product License Agreement, as if TNR was the party to the Product License Agreement instead of UMD.

    For the avoidance of doubt, TNR is agreeing to be bound as "Licensee" as defined in the Product License Agreement.

  (b) Playboy releases UMD from UMD's obligations, duties and liabilities to Playboy under the Product License Agreement to the extent related to the period, and which arise, as of or after the Effective Date.

    For the avoidance of doubt, UMD continues to assume and has responsibility and liability for any compliance, liabilities, claims and demands whatsoever in respect of the Product License Agreement that occurs prior to the Effective Date;

  (c) UMD releases Playboy from its obligations, duties and liabilities to UMD under the Product License Agreement and UMD agrees that it has no further rights under the Product License Agreement, in each case, to the extent related to the period, and which arise, as of or after the Effective Date as if TNR were named as a Party to the Product License Agreement in place of UMD;

  (d) TNR agrees with Playboy to assume the Novated Rights and Obligations of UMD under the Product License Agreement, to the extent related to the period, and which arise, as of or after the Effective Date.

    For the avoidance of doubt, TNR shall not assume and has no responsibility or liability for any compliance, liabilities, claims and demands whatsoever in respect of the Product License Agreement that occurs prior to the Effective Date;

  (e) Playboy consents to and accepts the acceptance of the novation of the Novated Rights and Obligations under the Product License Agreement, to the extent related to the period, and which arise, as of or after the Effective Date as if TNR were named as a Party to the Product License Agreement in place of UMD;

(f)    Playboy agrees that it will not assert against TNR any claim or defence that they may have or have had against UMD under the Product License Agreement to the extent related to the period and arises prior to the Effective Date.

each of the foregoing events and agreements being conditional on, and taking effect simultaneously with, the others.

## 5. REPRESENTATIONS AND WARRANTIES

Each of the Parties warrants to the other Parties that the statements set out below are true and accurate as of the Effective Date:

(a)    it is validly existing and is a company duly incorporated under the law of its jurisdiction of incorporation;

(b)    it has full power and authority to sign and deliver this Agreement and to exercise all its rights and perform all its obligations under this Agreement and has taken all necessary corporate action to authorize the execution of this Agreement and the exercise of its rights and the performance of its obligations hereunder, and this Agreement constitutes its valid and legally binding obligation, enforceable in accordance with its terms;

(c)    all actions, conditions and things required to be taken, fulfilled and done (including the obtaining of any necessary consents from third parties) in order (i) to enable it lawfully to enter into, exercise its rights and perform and comply with its obligations under this Agreement, and (ii) to ensure that those obligations are valid, legally binding and enforceable, have been taken, fulfilled and done;

(d)    neither the signing and delivery of this Agreement nor compliance with the terms and provisions hereof will conflict with, or result in a breach of (i) its memorandum of association or articles of association, (ii) any applicable law or regulation, (iii) any order, writ, injunction or decree of any court or governmental authority or agency, or (iv) any agreement or instrument to which it is a party or by which it is bound; and

(e)    each Party is entering into this Agreement in its own capacity and not on behalf of any other person.

## 6. INDEMNITY

UMD hereby undertakes to indemnify TNR and Playboy fully and keep TNR and Playboy indemnified fully at all times against any loss, damage or costs suffered, sustained or incurred by TNR and/or Playboy as applicable as a result of any claim arising from the breach of the terms of the Product License Agreement by UMD that occurs prior to the Effective Date.

## 7. CONFIDENTIALITY

7.1    The Parties shall treat all correspondences and negotiation between the Parties, provisions of this Agreement, knowledge and information in relation to the transactions contemplated under this Agreement and existence as well as any and all information, material, documents and data made available in writing, visual or machine readable form or orally or other documents derived from, containing or reflecting such information that was and will be exchanged between the Parties to comply with its responsibilities under this Agreement and with respect to the Parties and the Transaction ("**Confidential Information**") as strictly confidential (whether or not such Confidential Information is marked or identified as being confidential).

4

7.2 The Parties shall not use such Confidential Information otherwise than for the purposes set forth in this Agreement and shall not disclose the Confidential Information to any third party except in any of the following manners:

(a) with the prior written consent of the Party who may be affected by such disclosure;

(b) for the disclosure to any person (including any key personnel of the relevant financial institution, advisor or consultant of each Party) who needs to know the Confidential Information in order for a Party to perform under this Agreement, or so that the conditions under this Agreement can be fulfilled, provided always that the disclosing Party shall be obligated to ensure that such person be duly informed of the confidentiality of the Confidential Information and the breach by such person of this obligation shall be deemed as the breach of obligation under this Clause by such disclosing Party;

(c) for the disclosure as required by any applicable law, court order, central bank, or any regulatory body which including but not limited to the Securities and Exchange Commission and the Stock Exchange;

(d) such disclosure or use is required for the purpose of any judicial proceedings arising out of this Agreement; or

(e) if the information has come into the public domain through no fault of that Party.

7.3 The Parties understand and agree that the provisions under this Clause 6 shall survive the termination of this Agreement.

## 8. NOTICES AND OTHER COMMUNICATIONS

8.1 Any notice, communications or documents required to be given by a Party to the other Party under this Agreement shall be given in the English language and shall be deemed validly served by hand delivery, or sent by registered pre-paid post (or by registered airmail in the case of international service), or by e-mail to such address set out in this Clause or to such other address, or e-mail address as may be notified by one Party to the other Parties by a like notice hereunder.

8.2 The initial address and e-mail address of the Parties are:

(a) to TNR:

Attention: Chanin Thiencharoen
Address: 1 Charoenrat Road, Thung Wat Don, Sathon Bangkok, Thailand 10120
E-mail address: chanin_t@tnrcondom.com

(b) to UMD:

Attention: Jimmy Esebag
Address: 1901 Avenue of the Stars, Suite 470 Los Angeles, CA 90067
E-mail address: Jimmy@umdworld.com

(b) to Playboy:

Attention: VP, Global Licensing
Address: 9346 Civic Center Drive, Suite 200
Beverly Hills, CA 90210

5

E-mail address:   rpatel@playboy.com

**8.3**   Any such notice or communication shall be deemed to have been served:

(a)   if delivered by hand, at the time of delivery;

(b)   if posted by pre-paid post or by registered airmail or by courier service, at the expiration of five days after the envelope containing the same shall have been put into the post or have been received by the relevant courier company (as the case may be); or

(c)   if sent by e-mail shall be deemed to have been given when received into the addressee's e-mail system.

**9.   COSTS AND EXPENSES**

Each party hereto shall bear its own costs and expenses incurred in connection with the negotiation, preparation and implementation of this Agreement and the matter contemplated hereunder, including the fees and disbursements or their respective legal and other advisers.

**10.   GOVERNING LAW**

This Agreement shall be subject to, construed in accordance with and governed by the Laws of the State of California.

**11.   MISCELLANEOUS**

**11.1**   Each Party shall, in good faith, cooperate with each other and execute such instruments or documents and take such other actions as may reasonably be requested from time to time in order to carry out, evidence or confirm their rights or obligations or as may be reasonably necessary or helpful to give effect to this Agreement.

**11.2**   Any modification or alteration of any Clause of this Agreement will not be valid unless made in writing and duly signed by an authorized representative of all Parties.

**11.3**   This assignment provision as outlined in Paragraph 5.(b) of the Product License Agreement shall apply to this Agreement.

**11.4**   The failure of either Party at any time to exercise any of its rights under this Agreement shall not be deemed a waiver of any such rights or in any way prevent either Party from subsequently asserting or exercising any such rights.

**11.5**   This Agreement constitutes the entire agreement between the Parties relating to the subject matter hereof, superseding all prior agreements, memorandum of understandings, letter of intents or undertakings, oral or written.

**11.6**   This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but together shall constitute one instrument.

[*Signature Page Follows*]

**IN WITNESS WHEREOF,** this Agreement is made and signed in three identical copies in English. All Parties have read and understood this Agreement and affixed their signatures and companies seals (if any) to this Agreement on the date first above written.

Signed for and on behalf of

**THAI NIPPON RUBBER INDUSTRY PUBLIC COMPANY LIMITED**

by _____

(AMORN DARARATTANAROJ)

**UNITED MEDICAL DEVICES, LLC**

by _____

**PRODUCTS LICENSING LLC**

by _____

( REENA PATEL )

in the presence of:

_____ Witness

( Kathleen Brower )

_____ Witness

( Chirn Truecharoen )

_____ Witness

(                             )