QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Marshall M. Searcy III (Bar No. 169269)
  marshallsearcy@quinnemanuel.com
  Kristen Bird (Bar No. 192863)
  kristenbird@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendants Playboy
Enterprises International, Inc., and
Products Licensing LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THAI NIPPON RUBBER INDUSTRY PUBLIC LIMITED COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> PLAYBOY ENTERPRISES INTERNATIONAL, INC., PRODUCTS LICENSING LLC, and NICHOLAI ALLEN,, <br><br> Defendants. | Case No. 2:21-CV-09749-JFW <br><br> **DEFENDANTS PLAYBOY ENTERPRISES INTERNATIONAL, INC., AND PRODUCTS LICENSING LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:   May 23, 2022 [appearance not required] <br> Time:   1:30 p.m. <br> Crtrm.:  7A <br><br> The Hon. John F. Walter <br><br> Pre-Trial Conference Date: September 1, 2023 <br><br> Trial Date:       September 26, 2023 |

# **TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT.................................................................. 1

II.  ARGUMENT ........................................................................................... 2

A.  TNR Fails to Rebut Playboy's Franchise Law Arguments .................. 2

    1.  TNR's Opposition Shows it Cannot Establish the First Element of a Franchise ................................................................ 2

    2.  TNR Fails to Rebut Playboy's Substantial Association Arguments.................................................................................. 4

    3.  TNR's Franchise Claims Are Jurisdictionally Barred.................. 6

B.  TNR's Tortious Interference Claims Are Barred ................................. 6

    1.  TNR Cannot Avoid the Economic Loss Rule By Ignoring Its Complaint............................................................................. 6

    2.  TNR's Other Arguments to Avoid the Economic Loss Rule are Unavailing ...................................................................... 7

    3.  Playboy Cannot Be Liable for Intentionally Interfering with TNR's Third Party Contracts................................................. 8

C.  TNR Fails to State a Cognizable Claim for Fraudulent Inducement ......................................................................................... 8

D.  TNR's Conversion Claim Is Barred As A Matter Of Law Because TNR Bases The Claim On An Alleged Breach Of Contract ............................................................................................. 10

E.  TNR's UCL Claim Fails Because It Has An Adequate Remedy At Law............................................................................................... 11

DEFENDANTS PLAYBOY ENTERPRISES INTERNATIONAL, INC., and PRODUCTS LICENSING LLC'S
REPLY IN SUPPORT OF MOTION TO DISMISS

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3 *Boat & Motor Mart v. Sea Ray Boats, Inc.*,
   825 F.2d 1285 (9th Cir. 1987) ...................................................................3, 4

4

5 *Cusano v. Klein*,
   280 F. Supp. 2d 1035 (C.D. Cal. 2003) ...........................................................10

6 *Dawn Donut Co. v. Hart's Food Stores, Inc.*,
   267 F.2d 358 (2d Cir. 1959) ..............................................................................2

7

8 *Dep't of Parks and Recreation for the State of California v. Bazaar Del
   Mundo, Inc.*,
   448 F.3d 1118 (9th Cir. 2006) ...........................................................................2

9

10 *Desert Outdoor Advertising v. Superior Court*,
   196 Cal. App. 4th 866 (2011) ............................................................................9

11 *Erlich v. Menezes*,
   21 Cal. 4th 543 (1999) .......................................................................................7

12

13 *Frango Grille USA, Inc. v. Pepe's Franchising Ltd.*,
   No. CV 12-2086 DSF PLAX, 2014 WL 7892164
   (C.D. Cal. July 21, 2014) ...................................................................................6

14

15 *Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.*,
   2008 WL 111223 (N.D. Cal. Jan. 9, 2008).......................................................5

16 *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020)..............................................................11

17

18 *JRS Prods. Inc. v. Matsushita Elec. Corp. of Am.*,
   115 Cal. App. 4th 168 (2004) ............................................................................7

19 *Kim v. Servosnax, Inc.*,
   10 Cal. App. 4th 1346 (1992) .........................................................................4, 5

20

21 *Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ...................................................................................12

22 *Krommenhock v. Post Foods, LLC*,
   2020 WL 6074107 (N.D. Cal. Sept. 29, 2020).................................................11

23

24 *McColgan v. Mutual of Omaha Ins. Co.*,
   4 F. Supp. 3d 1228 (E.D. Cal. 2014) .................................................................9

25 *O'Shea v. Littleton*,
   414 U.S. 488 (1974)..........................................................................................11

26

27 *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*,
   150 Cal. App. 4th 384 (2007) ..........................................................................11

28

-ii-

*People v. Kline*,
110 Cal. App. 3d 587 (1980) .................................................................. 3, 4

*PM Group, Inc. v. Stewart*,
154 Cal. App. 4th 55 (2007) ...................................................................... 8

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
34 Cal. 4th 979 (2004) ............................................................................... 8

*Rosenthal v. Great Western Fin. Securities Corp.*,
14 Cal. 4th 394 (1996) ............................................................................... 9

*Rowland v. PaineWebber Inc.*,
4 Cal. App. 4th 279 (1992) ........................................................................ 9

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ................................................................... 11

*State Ready Mix, Inc. v. Moffatt & Nichol*,
232 Cal. App. 4th 1227 (2015) ................................................................. 7

*Stocco v. Gemological Institute of America, Inc.*,
975 F. Supp. 2d 1170 (S.D. Cal. 2013) .................................................... 6

*United Nat'l Maint. Inc. v. San Diego Convention Ctr., Inc.*,
766 F.3d 1002 (9th Cir. 2014) ................................................................... 8

*Welco Elec., Inc. v. Mora*,
223 Cal. App. 4th 202 (2014) ................................................................. 10

### **STATUTORY AUTHORITIES**

Business Profession Code § 17200 ............................................................. 1

California Franchise Investment Law (CFIL) § 31005 .............................. 5

California Family Rights Act (CFRA) § 20001 ......................................... 5

I.      **PRELIMINARY STATEMENT**

TNR's opposition fails to save the defective causes of action it asserts in its First Amended Complaint ("FAC"). For its franchise claims, TNR argues that, because Playboy had a number of different approval rights over product quality and advertising under the PLA, that it sold a franchise to TNR under that agreement.  But under governing law, licensing agreements ***must*** contain such approval rights. TNR does not and cannot allege the necessary indicia—such as material assistance from Playboy to TNR and involvement in the operations of the franchise—that would establish the existence of a franchise. The PLA is what it states it is: a licensing agreement.

TNR's interference and conversion allegations are also unavailing. TNR alleges that Playboy interfered with TNR's relationships with third parties—by breaching Playboy's duty of good faith and fair dealing to TNR.  TNR's tort allegations and its breach of good faith allegations overlap completely.  Under the economic loss doctrine, its tort claims are thus barred.  The law is clear.  TNR cannot bootstrap its contract claims into tortious interference and conversion claims.

TNR's fraudulent inducement claim also fails as a matter of law. Under the law, TNR cannot legitimately claim that it was deceived by, or reasonably relied on, a supposed misrepresentation of the terms of the PLA. TNR was already a party to that Agreement, there is no reason why it could not read its terms before agreeing to amend them.

Finally, TNR's § 17200 claim does not withstand scrutiny. TNR cannot show that any of the injuries it alleges—including the loss of goodwill and shelf space cited in its opposition—lack a remedy at law. Without such a showing, the § 17200 claim fails.

Accordingly, Playboy's motion to dismiss should be granted.

II.   **ARGUMENT**

    A.   **TNR Fails to Rebut Playboy's Franchise Law Arguments**

        1.   ***TNR's Opposition Shows it Cannot Establish the First Element of a Franchise***

TNR misunderstands the elements of a franchise. As Playboy explained in its motion, a franchise relationship requires both a substantial amount of material assistance provided by the franchisor (i.e., prescribing a system in substantial part) and proactive involvement on the part of the franchisor in the operations of the franchise. *See* Playboy's Motion ("Motion") 7–9. TNR urges that it was a franchisee because Playboy had approval rights over "product quality to marketing and advertising efforts to the use of subcontractors and distributors." Opposition at 10. But TNR does not and cannot cite to any authority indicating that these approval rights create a franchise relationship.

To the contrary, TNR simply overlooks the duties and obligations to monitor and control licensees that are imposed *by law* on licensors. *See Dep't of Parks and Recreation for the State of California v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1131 (9th Cir. 2006) (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959)). TNR never argues that the PLA's control mechanisms went beyond what the law requires of a licensor or how this licensing agreement was qualitatively different from any other licensing agreement. The implication of TNR's argument, thus, is alarming: in order to be a law-abiding licensor, a licensor must also submit itself to the strictures of California franchise law. That is not what the California Legislature intended, as confirmed by the Commissioner's guidance. *See* California Department of Financial Protection & Innovation, Release 3–F*: When does an Agreement Constitute a "Franchise"* (June 22, 1994) ("Release") ¶ 1.2.2.6 (marketing plan element "is not satisfied merely because an agreement imposes upon the operator of a business procedures or techniques *which are customarily observed in business relationships* in the particular trade or industry, even though, to some

1   extent, they may restrict the freedom of action or the discretion of the operator")
2   (emphasis added). The Commissioner's guidance lists typical intellectual property
3   licensing mechanisms, such as the mechanisms relied on by TNR, as "normal
4   routines" that do not constitute a franchise. *Compare id.* (noting it is customary for
5   licensees to maintain records for audit, for a licensee to observe specifications or to
6   follow particular formats) *with* Opposition at 9 (citing FAC ¶ 28)).

7       In sum, TNR contends that this intellectual property licensing regime was a
8   franchise, despite never showing how it was different from any other regime, never
9   showing how the PLA somehow went beyond what the law requires of a licensor, and
10  never citing a single authority suggesting that an intellectual property licensing
11  arrangement can be a franchise. That cannot be sufficient to survive a motion to
12  dismiss.

13      In its opposition, TNR relies on *Boat & Motor Mart v. Sea Ray Boats, Inc.*, 825
14  F.2d 1285, 1288–89 (9th Cir. 1987), to suggest that requiring a party to engage in
15  "aggressive advertising"—which is not actually alleged here—can be an indicator of
16  a franchise relationship. Opposition at 8. But in *Boat and Motor Mart*, the franchisor
17  did far more than just require its franchisee to aggressively advertise and promote
18  products. The franchisor supplied its franchisee with model marketing programs, a
19  full list of potential customers, press kits, promotional tools, marketing advice from
20  its advertising agency, put on educational programs for the franchisee's sales persons,
21  and proactively monitored its franchisee's performance and participated in strategy
22  meetings to improve performance. *See id.* at 1287. Furthermore, the franchisor in *Boat*
23  *and Motor Mart* manufactured the products at issue, not the franchisee. *Id.* TNR's
24  assertion that "the FAC alleges a series of controls at Playboy's disposal more
25  significant than those the Ninth Circuit found sufficient in *Sea Ray Boats*[,]" is also
26  misleading: TNR ignores the substantial material support *provided by* the franchisor
27  that is not provided for in the PLA or alleged in the FAC.

28

In that same vein, TNR fails to address Playboy's other authority such as *People v. Kline*, 110 Cal. App. 3d 587 (1980), or examples from the Commissioner's guidelines of material that is typically *provided by a franchisor* that are nowhere to be found in TNR's FAC. Rather, using a straw man argument, TNR posits that it can still show the existence of a franchise even when the franchisor does not provide "everything necessary for the franchisee to operate the relevant business." Opposition at 10–11. Again, TNR misunderstands the applicable law. An alleged franchisor must at least provide *something*, and in case law examples, franchisors provided *significant amounts* of material to their franchisees. *See, e.g., Boat and Motor Mart*, 825 F.2d at 1287; *Kline*, 110 Cal. App. 3d at 591; *Kim v. Servosnax, Inc.*, 10 Cal. App. 4th 1346, 1350 (1992) (cafeteria franchisor would build out cafeteria space, purchase and install equipment, then sign on franchisee and "stay on premises for a short training period."); *see also* Release ¶ 1.2.2.7 (providing detailed directions and advice on operations, providing training sessions, manuals, and trade secrets). There is no allegation that Playboy provided any such materials to TNR—because it did not. None of the examples from the FAC cited by TNR in its opposition allege Playboy provided TNR with anything. *See* Opposition at 9 (citing FAC ¶ 28). TNR's inability to make any such showing, much less an even colorable analogy to case law, is fatal to its claim.

2. ***TNR Fails to Rebut Playboy's Substantial Association Arguments***

TNR argues that Playboy's motion to dismiss should "be denied because the FAC alleges that the PLA granted TNR the right to use Playboy's mark, and that mark was communicated to TNR's customers." Opposition at 12. If TNR's argument were accepted, every intellectual property licensing agreement would be swept up by California's franchise laws. That was not the intent of the legislature or how the law has been interpreted. *See* Release ¶ 1.2.2.6.

1      But TNR again misunderstands the governing law, which provides that the
2   substantial association element entails that "[t]he operation of the franchisee's
3   business pursuant to that plan or system is substantially associated with the
4   franchisor's trademark, service mark, trade name, logotype, advertising, or other
5   commercial symbol designating the franchisor or its affiliate." CFIL § 31005; CFRA
6   § 20001. Relying on an out of context quote, TNR urges that the "substantial
7   association" element is satisfied when "the franchisee is granted the right to use the
8   franchisor's symbol *or* where the trademark is communicated to," the franchisee's
9   customers. Opposition at 11 (quoting *Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales,*
10  *Inc.*, 2008 WL 111223, at *5 (N.D. Cal. Jan. 9, 2008)). TNR misunderstands *Gabana.*
11  There, the court held that the plaintiff *was not* a franchisee, even though it "traded in
12  Gap [trademarked] products." *See Gabana*, 2008 WL 111223, at *5. Clearly, the
13  trademark was communicated to customers. The court nonetheless found against the
14  putative franchisee because it could not establish association in its customer's minds
15  with the *trademark itself*, only the products bearing the trademark. *See id.* The same
16  is true here.

17     TNR also suggests that "[the franchise laws] do not require an association
18  between the franchisor and franchisee's overall businesses." Opposition at 13. Quite
19  the contrary, under the law "[T]he franchisee, thus is *intimately associated* with [the
20  franchisor] *in the mind of* the [customer]." *Kim*, 10 Cal. App. 4th at 1357 (emphasis
21  added). "[I]t is necessary to consider whether that commercial symbol is brought to
22  the attention of the Licensee's customers to such an extent that the *customers regard*
23  *the Licensee's establishment as one in a chain identified with the licensor.*" Release
24  ¶ 1.3. (emphasis added). The Commissioner's guidance further emphasizes the
25  "appearance of a unified operation[.]" *Id.* TNR's unsupported argument and the actual
26  law cannot be reconciled. TNR cannot establish substantial association.

27

28

### 3. *TNR's Franchise Claims Are Jurisdictionally Barred*

TNR fails to cite any authority to support its jurisdictional arguments. As Playboy argued in its motion, the FAC admits that Nicholai Allen ("Allen") and his related entities conducted the TNR related business *from* within California. TNR cites no authority to suggest that a paid agent operating within California can bring the principal within the jurisdictional reach of California's franchise laws.

Moreover, *Frango Grille USA, Inc. v. Pepe's Franchising Ltd.*, No. CV 12-2086 DSF PLAX, 2014 WL 7892164, at *2 (C.D. Cal. July 21, 2014), relied upon by TNR, is inapposite. The operative agreement in *Frango* explicitly contemplated a California-based franchise, the franchisee simply had not opened it yet. *See id.* at *2. The PLA (attached to the FAC) makes no reference to California-based operations, only that TNR could sell and distribute into California. *See* FAC, Ex. 1. Like the plaintiff in *Stocco v. Gemological Institute of America, Inc.,* 975 F. Supp. 2d 1170, 1183 (S.D. Cal. 2013), TNR could sell into California, but it never sold or operated *from* California and there is no allegation that it ever did so. TNR cites no authority that occasional employee visits to California satisfy the jurisdictional rules of the franchise laws. California's franchise laws do not reach the PLA.

### B. **TNR's Tortious Interference Claims Are Barred**

#### 1. *TNR Cannot Avoid the Economic Loss Rule By Ignoring Its Complaint*

To avoid the economic loss doctrine, TNR would have the Court ignore much of its complaint. TNR urges that the economic loss rule does not apply because to the allegations supporting its interference claims are different than those supporting its breach of contract claim, *See* Opposition at 17–18; and that Playboy relies on a "single example" of factual overlap between the breach claims and prospective economic relations claims. *See* Opposition at 20–21. But TNR has two breach of contract claims in its complaint, and the allegations in TNR's claim for breach of the implied covenant of good faith and fair dealing and its claim for breach of contract completely overlap

-6-

with those the tortious interference claims. *See* Motion at 16–17 (*comparing* FAC ¶¶ 146–155 [TNR's two breach of contract claims] *with* FAC ¶¶ 167–197 [TNR's tortious interference claims]).

In fact, TNR's negligent interference claim *relies entirely* on Playboy's alleged contractual breaches. *See* FAC ¶ 155 (breach of good faith and fair dealing) and ¶¶ 181–86 (intentional interference with prospective economic relations); *see also* Motion at 20 n.14. TNR's tortious interference claims "merely restate contractual obligations" allegedly breached by Playboy, *State Ready Mix, Inc. v. Moffatt & Nichol*, 232 Cal. App. 4th 1227, 1232 (2015), and TNR does not cite any authority suggesting that allegations relating to an implied covenant claim are somehow exempt from the economic loss rule.

### 2.  *TNR's Other Arguments to Avoid the Economic Loss Rule are Unavailing*

TNR also asserts that its tortious interference claims should survive dismissal because they relate to "TNR's contractual relationships with *third parties*, not Playboy's breaches of the PLA[,]" and that "Playboy itself was neither a party nor an agent of a party to these contracts." Opposition at 15–16.  TNR's argument ignores the applicable law. "[A] breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business." *JRS Prods. Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 173 (2004). Playboy's lack of privity with TNR's contracts is thus irrelevant.

TNR next posits that "the damages arising" from the alleged tort claims are different from the alleged breach claims. *See* Opposition at 16–17. However, "[t]his limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise." *Erlich v. Menezes*, 21 Cal. 4th 543, 550 (1999). In other words, the difference in damages is a reason *to apply the rule*, not a reason to ignore it.

Likewise, TNR's reliance on *Robinson Helicopter* to support its interference claims is misplaced. As the California Supreme Court stated there, the economic loss rule does not apply to a fraud claim, "[o]ur holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 993 (2004). Tortious interference claims are not exempted from the economic loss rule, *cf. id.* at 989–90 (not including tortious interference on list of exempted torts), thus TNR's claims are barred.

### 3. ***Playboy Cannot Be Liable for Intentionally Interfering with TNR's Third Party Contracts***

TNR argues that parties with "significant economic interests" in a contract may nevertheless be liable for intentionally interfering with that contract. *See* Opposition at 19 (citing *United Nat'l Maint. Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1008 (9th Cir. 2014)). But TNR's argument ignores that "[P]arties with significant economic interests in a contract *that necessarily contemplates* their own performance under a separate contract" cannot be liable for intentional interference. Motion at 18 (citing *PM Group, Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007)). In fact, *United Nat'l* expressly distinguished the case before it from *PM Group*. *See United Nat'l*, 766 F.3d at 1008. And, as TNR conceded in the FAC, "[Playboy's alleged breach] jeopardized TNR's performance under the General Merchandise Agreement with Walmart[.]" FAC ¶ 72. By claiming its contract with Walmart was jeopardized by Playboy's alleged breach, TNR acknowledges Playboy's performance under the PLA was necessary to its Walmart (and other third party) agreements.

### C. **TNR Fails to State a Cognizable Claim for Fraudulent Inducement**

TNR suggests that Playboy somehow had a duty to explain the terms of the PLA to TNR. But this 'duty' has no basis in law or logic. "No law requires that parties dealing at arm's length have a duty to explain to each other the terms of a written

-8-

contract," particularly where the language is express and clear. *Rowland v. PaineWebber Inc.*, 4 Cal. App. 4th 279, 286 (1992), *disagreed with on other grounds in Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 415 (1996)).

TNR asserts that a duty arises from "salient facts." Opposition at 22. But TNR does not explain how these "salient facts" give rise to any duty. A contractual obligation to act as a "supportive licensor" does not give rise to a duty or tort liability, and TNR does not cite any authority for this proposition—because this theory has no basis in law.

TNR also fails to show that it ever justifiably relied on Playboy's supposed misrepresentations. Reliance is a necessary element to a fraudulent inducement claim. *See McColgan v. Mutual of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1233 (E.D. Cal. 2014) (reliance is an essential element of a fraudulent inducement claim). TNR alleges "the final and agreed–upon language of the PLA, prior to the Eighth Amendment, *clearly grants* TNR a license to all condoms and non–medical personal lubricants bearing and sold in connection with Playboy's marks and images, *including CBD condoms and lubricants*." FAC ¶ 49 (emphasis added). TNR makes no effort to explain how Khun Amorn, the CEO of a publicly-traded company, could reasonably rely on a supposed misrepresentation about the interpretation of a written agreement—the PLA—that TNR was already a party to. TNR's conclusory allegations that it relied on Playboy's representations that the Eight Amendment needed to be signed urgently and that it relied on Allen as a new licensee are unavailing. Opposition at 22. TNR and its officers, at the very least, had an obligation to read the documents they claim to have been deceived about. *See Desert Outdoor Advertising v. Superior Court*, 196 Cal. App. 4th 866, 872–73 (2011) ("A cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement . . . [g]enerally, it is *not reasonable* to fail to read a contract; this is true even if the plaintiff relied on

the defendant's assertion that it was not necessary to read the contract.") (emphasis in original).

### D.   **TNR's Conversion Claim Is Barred As A Matter Of Law Because TNR Bases The Claim On An Alleged Breach Of Contract**

TNR does not dispute that the economic loss rule bars conversion claims "predicated on a mere breach of contract." *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1043 (C.D. Cal. 2003). Instead, it claims to have alleged "wrongful conduct separate and apart from Playboy's breach of the PLA." Opposition at 23. But to support this claim, TNR simply re-alleges that "Playboy wrongfully usurped TNR's resources to support its own products, for example, TNR's payment of $210,000 to Allen by poaching Allen to be a double agent to undermine TNR's operations." Opposition at 23 (citing FAC ¶ 207). This allegation is indistinguishable from TNR's contract-based allegations, "[d]irecting . . . Allen to bill or charge TNR for improper and unauthorized expenses to support sales of Playboy products[.]" Motion at 23 (quoting FAC ¶ 155(f)).

In addition, "California cases permitting an action for conversion of money *typically* involve those who have misappropriated, commingled, or misapplied **specific funds held for the benefit of others**." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*, 150 Cal. App. 4th 384, 396 (2007) (emphasis added). Relying on *Welco Elec., Inc. v. Mora*, 223 Cal. App. 4th 202 (2014), TNR argues that it has alleged conversion of a "specific and identifiable sum." Opposition at 24. But TNR does not actually identify that sum, and TNR's reliance on *Welco* is misplaced. There, the court held that "the intangible property converted was plaintiff's credit card or its number and a portion of plaintiff's credit card account, *resulting in the taking from plaintiff*, or unauthorized transfer of, a specific sum of money." *Welco Elec., Inc.*, 223 Cal. App. 4th at 216. TNR does not allege that Playboy converted TNR's credit cards, or "other instruments such as checks, bonds, notes, bills of exchange, warehouse receipts, stock certificates, and information related to those instruments"

-10-

to obtain TNR's money. *Id.* at 214. Instead, TNR alleges that Playboy asked TNR's agent to seek reimbursements that he was not entitled to. *See* FAC ¶ 207. TNR cannot satisfy the "typical" requirements for money to be converted, nor are its allegations analogous to the holding of the one case it relies upon. Its claim fails as a matter of law.

E.   **TNR's UCL Claim Fails Because It Has An Adequate Remedy At Law**

As plaintiff, TNR "must establish that [it] lacks an adequate remedy at law" for its UCL claim to survive dismissal. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839–44 (9th Cir. 2020) (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). TNR does not allege a lack of adequate legal remedy anywhere in the FAC. *See* FAC ¶¶ 157–66 (UCL cause of action). This is an appropriate basis for dismissal because TNR has the burden of pleading "the basic requisites" of its UCL claim. *Sonner*, 971 F.3d at 839; *see also In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.,* 497 F. Supp. 3d 552, 638–39 (N.D. Cal. 2020); *Krommenhock v. Post Foods, LLC,* 2020 WL 6074107, at *1 (N.D. Cal. Sept. 29, 2020). There are no allegations in the FAC that TNR lacked an adequate remedy at law. *See* FAC ¶¶ 157–66 (UCL Claim For Relief). Moreover, in its prayer for relief, TNR simply asks for "damages and restitution . . . in excess of $100,000,000," without explaining what portion of that sum can only be redressed in equity. It is TNR's burden to plead it lacks an adequate remedy at law, yet the FAC is devoid of any such allegations.

TNR now claims, in conclusory fashion, that its "UCL claim is premised on conduct for which it has no adequate remedy at law[.]" Opposition at 24. TNR cites its allegations regarding shelf space and usurping its good will. *See id.* (citing FAC ¶ 160). However, neither the FAC or TNR's opposition explains *how or why* TNR lacks an adequate remedy at law for these alleged actions. That is TNR's burden, and conclusory statements without analysis fail to satisfy that burden.

Lastly, TNR  asserts that it is only seeking "restitutionary disgorgement" with its UCL claim. However, TNR admits it is seeking disgorgement "from Playboy for amounts TNR expended *or lost* based on [Playboy's alleged] unfair business practices." Opposition at 25. TNR admits it is seeking to recover lost business opportunities and profits. That is not an appropriate remedy under the UCL. "Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1151 (2003). TNR's UCL claim thus fails.

DATED:  May 9, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____

MARSHALL M. SEARCY III
Attorneys for Defendants Playboy
Enterprises International, Inc., and
Products Licensing LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of May, 2022, I electronically filed **DEFENDANTS PLAYBOY ENTERPRISES INTERNATIONAL, INC., and PRODUCTS LICENSING LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS** using the CM/ECF system which will send notification of such to all parties. I also certify the document was served via U.S. Mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access the document through the CM/ECF system.

By:  */s/ Marshall Searcy*

Marshall Searcy