1  KIRKLAND & ELLIS LLP
   Mark Holscher (SBN 139582)
2  mark.holscher@kirkland.com
   Kristin Rose (SBN 278284)
3  kristin.rose@kirkland.com
4  555 South Flower Street
   Los Angeles, CA 90071
5  Telephone: (213) 680-8400
   Facsimile: (213) 680-8500
6

7  *Attorneys for Plaintiff*
   *Thai Nippon Rubber Industry Public Limited Company*
8

9  QUINN EMANUEL URQUHART &              HINSHAW & CULBERTSON LLP
   SULLIVAN, LLP                         Gary E. Devlin (SBN 210517)
10 Marshall M. Searcy III (Bar No. 169269)  gdevlin@hinshawlaw.com
   marshallsearcy@quinnemanuel.com       350 South Grand Ave., Suite 3600
11 Scott B. Kidman (Bar No. 119856)      Los Angeles, CA 90071-3476
   scottkidman@quinnemanuel.com          Telephone: 310-909-8000
12 865 South Figueroa Street, 10th Floor Facsimile: 310-909-8001
   Los Angeles, California 90017–2543
13 Telephone:  (213) 443–3000
   Facsimile:   (213) 443–3100           *Attorneys for Defendant*
14                                       *Nicholai Allen*

15 *Attorneys for Defendants*
   *Playboy Enterprises International, Inc.*
16 *Products Licensing, LLC*

17 [Additional Counsel on Signature Page]

18

19               UNITED STATES DISTRICT COURT

20      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

21
   Thai Nippon Rubber Industry Public      Case No. 2:21-cv-9749-JFW-PD
22 Limited Company,
                                           **STIPULATED PROTOCOL FOR**
23          Plaintiff,                      **THE DISCOVERY AND**
                                           **PRODUCTION OF DOCUMENTS**
24     vs.                                 **AND ESI**
                                           **[DISCOVERY MATTER:**
25 Playboy Enterprises International, Inc., **REFERRED TO MAGISTRATE**
   Products Licensing, LLC, and Nicholai   **JUDGE HON. PATRICIA**
26 Allen                                   **DONAHUE]**

27          Defendants.                    Judge:          Hon. John F. Walter

28                                         Trial Date:     September 26, 2023

-1-
STIPULATED PROTOCOL FOR PRODUCING DOCUMENTS AND ESI

**STIPULATED PROTOCOL FOR THE DISCOVERY AND PRODUCTION OF DOCUMENTS AND ESI**

Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure, Plaintiff Thai Nippon Rubber Industry Public Limited Company ("Plaintiff") and Defendants Playboy Enterprises International, Inc., Products Licensing, LLC, and Nicholai Allen, (collectively "Defendants" and together with Plaintiff the "Parties"), by and through their respective counsel, have jointly stipulated to the terms of this Stipulated Protocol for the Discovery and Production of Documents and ESI (the "ESI Protocol").

The ESI Protocol shall govern the discovery and production of documents and electronically stored information ("ESI") by the Parties in the above-captioned litigation.  Nothing herein shall enlarge or affect the proper scope of discovery, nor shall anything herein imply that any documents or ESI collected or produced under the terms of this protocol are properly discoverable, relevant, or admissible in the litigation.

This ESI Protocol shall also govern productions made by any third party subpoenaed in this action unless otherwise agreed to by the Party issuing the subpoena and the third Party.  Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action after approval of the ESI Protocol.

I.     **Scope of Discovery**

The Parties agree to meet and confer in an attempt to reach an agreement on the scope of relevant and proportional discovery within the meaning of Rule 26(b)(1), including:

- Data sources;
- Date ranges;
- File types;
- Custodians;
- Search terms; and

- Whether a party intends to use Technology Assisted Review ("TAR")

## II. Production Format

### A. Definitions

As used herein, the following terms shall have the following meanings:

1. The terms "Electronically Stored Information" and "ESI" as used herein have the same meaning as contemplated by the Federal Rules of Civil Procedure;

2. "Native file format" means and refers to the format of ESI in which it was originally generated and/or normally kept by the producing Party in the usual course of its business and its regularly conducted activities;

3. "Metadata" means and refers to information about information or data about data and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system;

4. "Document" or "Documents" are used in their broadest sense, to the full extent permitted by Rules 26 and 34 of the Federal Rules of Civil Procedure.

### B. Paper Records

Paper records will be scanned or otherwise converted into an electronic form from paper documents in the following format:

1.     TIFFs.  All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi, and 8.5 x 11-inch page size, except for documents requiring higher resolution or different page size. Each image file should have a unique file name which shall be the Bates number of the page.

2.     In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).  The Parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

3.     Objective Coding Fields.  The following objective coding fields should be provided, if applicable and/or available:  (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; and (5) source location/custodian.

**C.     Electronically Stored Information**

Subject to the exceptions discussed below, the Parties will produce ESI in TIFF format according to the following specifications:

1.     All TIFF formatted documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8.5 X 11-inch page size, except for documents requiring different resolution or page size.

2.     An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, will accompany all document images.

3.     Each imaged version of an electronic document will be created directly from the original electronic document.

4.    Color documents (*e.g.*, color photographs or graphical representations in color) may be produced as black & white, single-page TIFF images in accordance with the technical specifications set forth herein.  Upon a reasonable request by the receiving Party, the producing Party shall produce specifically identified documents in color.  If color images are required to render the document legible and usable, the files shall be delivered in a single page, JPEG format, accompanied by the requisite document-level text file as specified herein.

5.    Full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt per *.tif image).  Where ESI contains text that has been redacted under an assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd, and the file-level OCR text will be produced in lieu of the extracted text.  Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file.  The full path of the text file must be provided in the *.dat data load file.

6.    There will be two Load/Unitization files accompanying all productions.  One will be the Image load file, and the other will be the Metadata load file.

(a)   *Image Load File.*

(i)   The name of the image load file shall mirror the name of the delivery volume and should have a .lfp, .opt, or .dii* extension (*e.g.*, ABCOOl.lfp).  The volume names shall be consecutive (*i.e.*, ABC001, ABC002, et. seq.)  *If a .dii file is produced, the accompanying metadata load file shall be*

STIPULATED PROTOCOL FOR PRODUCING DOCUMENTS AND ESI

1

2

*separate from the .dii file and not contained within the .dii file.*

3   (ii)   The image load file shall contain one row per TIFF image.

4   (iii)   Every image in the delivery volume shall be referenced in

5   the image load file.

6   (iv)   The image key shall be named the same as the Bates number

7   of the page.  Load files shall not span across media (e.g.,

8   CDs, DVDs, Hard Drives, etc.).  A separate volume shall be

9   created for each piece of media delivered.

10   (v)   Emails will be produced with the CC and BCC lines

11   displayed in the image.

12   (b)   *Metadata Load File.*

13   (i)   The metadata load file should include the metadata fields

14   set forth in Exhibit A, to the extent such fields are available.

15   (ii)   The Parties agree that there is no obligation for any

16   party to generate metadata if such information is not

17   automatically generated in the ordinary course.

18   7.   The Parties agree to produce the following t y p e s  o f ESI in

19   native  file format:

20   •   Excel spreadsheets

21   •   PowerPoint files

22   •   Microsoft Access databases

23   •   Audio/video files

24   8.   Any document produced in native format will be produced

25   according to the following specifications, to the extent practical

26   and available:

27   (a)   A unique document number shall be used as the file name.

28   The original file name and extension shall be preserved in

-6-

the corresponding load file.  An example of this convention would be:  "CHOOOOOOO1.xlsx" with metadata in the load file listing the original filename and extension as "Copyrightdata.xlsx."

(b)    Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number of the corresponding file and, where pertinent, the confidentiality designation.

9.    To the extent that potentially relevant information is contained in any databases, the Parties agree to meet and confer regarding how such information can be identified and produced in this Action.

**D.    Production Delivery**.

Unless otherwise agreed, documents and ESI will be produced via secure FTP site or similar electronic transmission format. If the data volume is such that electronic transmission of the production is impracticable, the production will be delivered on an encrypted external hard drive to a location designated by the receiving party.

**E.    Resolution of Technical/Logistical Issue**

Documents that present imaging or format production problems that the producing party cannot otherwise resolve without resorting to disproportionately burdensome or costly measures shall be identified and disclosed to the requesting Party; the Parties shall then meet and confer to attempt to resolve the problems.

If a producing Party asserts that certain ESI is inaccessible or cannot be produced in an appropriate format, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer with their respective technology experts to discuss whether there may be any alternative means to access and/or produce such ESI.  If the Parties cannot resolve

STIPULATED PROTOCOL FOR PRODUCING DOCUMENTS AND ESI

1  any such disputes after such a meet and confer has taken place, any party may present

2  the issue to the Court for resolution.

3  **F.     Redacted Files**

4  The producing Party may redact from any TIFF image, metadata field, or native

5  file material that is protected from disclosure by applicable privilege or immunity or

6  that is governed by other applicable privacy law or regulation.  Original extracted text

7  will not be provided for electronic documents that have been redacted.  Instead, for

8  documents with redacted images, a separate OCR text file will be created for each

9  redacted document that displays only the unredacted text.  Any such redactions shall

10  be clearly marked on the document (*e.g.*, with a solid, black box) that indicates

11  whether the redaction is being applied due to an applicable privilege or for privacy

12  reasons.  Material redacted for privilege reasons should be identified by a black box

13  containing the words "Redacted - Privilege", while privacy related redactions should

14  be identified by a black box containing the words "Redacted - Privacy".  For

15  documents redacted natively the producing Party will provide OCR or extracted text

16  after the redactions have been applied.  Any native redactions must also identify

17  whether such redactions are being made based on privilege or privacy.   Any metadata

18  fields reasonably available and unnecessary to protect the privilege protected by the

19  redaction shall be provided.  The foregoing does not affect the Parties' obligations

20  under Rule 26(b)(5).

21  **G.     Data Load Files/Cross-Reference Files**

22  Fielded data should be exchanged via a document-level-database load file in

23  standard Concordance (DAT) format.  All image data should be delivered with a

24  corresponding image load file in one of three formats:  standard IPro (LFP), Opticon

25  (OPT), or Summation (DII).

26  **H.     Deduping Documents**

27  The Parties shall dedupe globally (*i.e.*, across all custodians) using the MD5 or

28  SHA-1 hash values.  This will result in the producing Party needing to produce only

-8-

1    a single copy of responsive Duplicate ESI.  The Parties shall de-duplicate at the

2    document level for stand-alone documents and at the family level for emails.  De-

3    duplication shall not break apart families.  Where a stand-alone document or top-level

4    email is found in more than one custodian's files, the metadata load file shall list all

5    such custodians, even though the document or email is being produced only once.

6    **I.    E-mail Threading**

7    The parties may elect to use industry standard analytical tools to perform e-

8    mail threading.    To the extent that an e-mail thread contains privileged

9    communications, such communications can be redacted.  An e-mail thread that

10    contains only communications protected by an applicable privilege may be withheld

11    in its entirety.

12    **J.    Privilege Logs**

13    For any Document withheld in its entirety or produced but redacted on the basis

14    of privilege or work product protections (collectively, "privilege"), the Producing

15    Party, or third party, shall provide a privilege log that complies with the requirements

16    of the Federal Rules of Civil Procedure. The privilege log shall be in Excel format or

17    any other format that permits electronic sorting and searching.  The parties agree to

18    meet and confer regarding a date range for privilege logs, whether categorical logs

19    may be used for any period of time, and a timeline for production of privilege and

20    redaction logs.

21    Subject to any approved alternative logging process agreed upon by the parties,

22    a party's privilege log shall be detailed enough to enable other parties to assess the

23    applicability of the privilege asserted; shall identify the custodian(s), author(s), any

24    and all recipient(s), date, filename, beginning and ending Bates or document

25    identification numbers, privilege and/or doctrine relied upon, provide a description of

26    the document being withheld that complies with the requirements of the Federal Rules

27    of Civil Procedure.

28

STIPULATED PROTOCOL FOR PRODUCING DOCUMENTS AND ESI

1    **IT IS SO STIPULATED.**

2    DATED:  May 10, 2022                     Respectfully submitted,

3                                                          KIRKLAND ELLIS LLP

4
                                                 By /s/ Kristin Rose
5                                                     KRISTIN ROSE

6                                                     DUANE MORRIS LLP
7                                                     Cyndie M. Chang (SBN 227542)
                                                      CMChang@duanemorris.com
8                                                     865 South Figueroa Street, Suite 3100
                                                      Los Angeles, California 90017-5450
9                                                     Telephone: (213) 689 7400
                                                      Fax: (213) 689 7401
10

11                                                   *Attorneys for Plaintiff Thai Nippon*
                                                     *Rubber Industry Public Limited*
12                                                   *Company*

13                                                   QUINN EMANUEL URQUHART &
                                                     SULLIVAN, LLP
14

15                                               By /s/ Marshall M. Searcy III
                                                      MARSHALL M. SEARCY III
16

17                                                   *Attorney for Defendants Playboy*
                                                     *Enterprises International, Inc., and*
18                                                   *Products Licensing, LLC*

19                                                   HINSHAW & CULBERTSON LLP

20
                                                 By /s/ Gary E. Devlin
21                                                    GARY E. DEVLIN

22                                                   *Attorney for Defendant Nicholai Allen*

23

24                                      **SIGNATURE ATTESTATION**

25         I attest that all other signatories listed, and on whose behalf this filing is
26   submitted, concur in the filing's content and have authorized this filing.

27                                               By: /s/ *Kristin Rose*
                                                      Kristin Rose
28

-10-

1

### **Exhibit A**

2

| Field Name | Field Description | Required for Email | Required for Non-Email ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | X | X |
| AllCustodians[1] | Name of all custodians who had a copy of a document. | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | |
| AttachCount | Number of attachments to an email | X | |
| AttachName | Name of each individual attachment | X | |
| From | From field extracted from an email message | X | |
| Author | Author field extracted from the metadata of a non-email document | | X |

---

[1]   Parties will provide AllCustodians field based on documents received at the time of the production. When the parties' productions are completed, the producing party will provide an overlay for previously produced documents containing all additional custodians whose documents have been added after the time of the initial production.

STIPULATED PROTOCOL FOR PRODUCING DOCUMENTS AND ESI

| Field Name | Field Description | Required for Email | Required for Non-Email ESI |
|---|---|---|---|
| To | To or Recipient field extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an emailmessage | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | |
| Email Subject | Subject line extracted from an email message | X | |
| Filename | File name — Original name of file as appeared in original location | | X |
| Title | Title field extracted from the metadata of a non-email document | | X |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Rcvd, but not both) | X | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Rcvd, but not both) | X | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | X |
| DateMod | The application recorded time on which the document was last modified | | X |
| TimeSent | Time email was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Rcvd, but not both) | X | |

STIPULATED PROTOCOL FOR PRODUCING DOCUMENTS AND ESI

| Field Name | Field Description | Required for Email | Required for Non-Email ESI |
|---|---|---|---|
| TimeRcvd | Time email was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Rcvd, butnot both) | X | |
| NativeLink (if natives are exchanged) | Relative path to any files produced in native format | X | X |
| TextLink (if text is exchanged) | Relative path to any OCR/extracted text files in the production set | X | X |
| Confidential | Confidentiality Designation | X | X |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | X | X |
| HashValue | MD5 or SHA-1 hash value used to de-duplicate the data | X | X |
| FileExtension | File extension of native file | X | X |

-13-