# EXHIBIT A

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Kristin Rose (SBN 278284)
kristin.rose@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Cyndie M. Chang (SBN 227542)
CMChang@duanemorris.com
DUANE MORRIS LLP
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: (213) 689-7400
Fax: (213) 689-7401

*Attorneys for Plaintiff*
*Thai Nippon Rubber Industry Public*
*Limited Company*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THAI NIPPON RUBBER INDUSTRY PUBLIC LIMITED COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> PLAYBOY ENTERPRISES INTERNATIONAL, INC., PRODUCTS LICENSING, LLC, and NICHOLAI ALLEN | Case No. 2:21-cv-09749-JFW(PDx) <br><br> The Honorable John F. Walter <br><br> **[PROPOSED] STATEMENT OF DECISION** <br><br> Judge: Hon. John F. Walter <br><br> FAC Filed: March 16, 2022 <br> Motion to Dismiss Filed: April 26, 2022 <br> Hearing Date: May 23, 2022 <br> Hearing Time: 1:30 p.m. <br> Hearing Location: 7A <br><br> Pre-Trial Conference: September 1, 2023 <br> Trial Date: September 26, 2023 |

Plaintiff Thai Nippon Rubber Industry Public Limited Company ("TNR" or "Plaintiff") filed the operative First Amended Complaint ("FAC") on March 16, 2022. On April 26, 2022, Defendants Playboy Enterprises International, Inc. and Products Licensing, LLC (together, "Playboy" or "Defendants") filed a Motion to Dismiss (the "Motion") TNR's franchise claims (Counts I and II), UCL claim (Count V), tortious interference claims (Counts VI through VIII), fraudulent inducement claim (Count IX), and conversion claim (Count X).

Having carefully considered the papers filed in support of and in opposition to the Motion and the pleadings filed in this action, for the following reasons the Court **DENIES** the Motion in its entirety.

## I.   BACKGROUND

### A.   TNR, Playboy, and the Product License Agreement.

The FAC alleges the following facts, which are accepted as true for purposes of resolving the Motion to Dismiss. TNR is a manufacturer of condoms and lubricant products. FAC ¶ 10. In April 2018, TNR entered into a Product License Agreement ("PLA") with Playboy,[1] which granted TNR the exclusive right to design, manufacture, advertise, promote, sell, and distribute condoms bearing Playboy's mark (the "Products") in an area covering more than 180 countries, including the United States and California (the "Territory"). FAC ¶ 25. In exchange for this grant of exclusive rights, TNR paid to Playboy guaranteed and earned royalties in the seven-figure range, and an upfront fee under the Novation Agreement. FAC ¶¶ 25–26, 119.

The PLA set forth specifications for TNR's design, manufacture, advertisement, promotion, sale, and distribution of the Products, and gave Playboy significant control over TNR's use of its mark. FAC ¶¶ 28–29. Among other things, the PLA: (a) limited TNR's exercise of its exclusive rights to the Territory and gave Playboy the right to deem any

---

[1] TNR entered into the PLA with Playboy by way of Sale and Purchase Agreement ("SPA") with its predecessor in interest United Medical Devices, LLC ("UMD"), and a Novation Agreement between Playboy, UMD, and TNR. FAC ¶¶ 18–25.

1

sales of the Products outside the Territory to be an incurable default; (b) conditioned TNR's ability to sell the Products on receiving prior approval from Playboy and imposed a series of strict requirements on product quality and the related packaging materials used in connection with the Products; (c) required TNR to make advertising, promotion, and marketing expenditures in a given License Year related to the Products of not less than 3% of its net sales or minimum net sales; (d) required TNR to submit its advertising, promotional and marketing plan for Playboy's approval on a yearly basis, in Playboy's specified format; (e) required TNR to follow the approved marketing plan in connection with sales of the product; (f) required TNR to seek preapproval of any public relations efforts related to the Products; (g) required TNR to keep books in the manner prescribed by Playboy; (h) required TNR to seek pre-approval for the use of any subcontractor or supplier to manufacture or distribute the products; and (i) required TNR to meet minimum net sales amounts each year. FAC ¶ 28. The PLA also imposed severe consequences for failure to comply with these conditions. *Id.*

TNR worked to exercise its rights under the PLA to expand sales and distribution of the Products within the Territory. FAC ¶ 55. However, Playboy began to attempt to take back rights under the PLA for itself. FAC ¶¶ 1, 13, 55. Playboy induced TNR to enter the Eighth Amendment to the PLA, which re-defined "Products" to exclude CBD-based products, a potentially lucrative product line that Playboy wished to own and operate itself. FAC ¶¶ 44–45. Playboy also undertook to poach TNR's agent, Nicholai Allen ("Allen") by covertly offering Allen a consulting role and working with Allen to sell his wipes products under the Playboy brand, in exchange for Allen's assistance in exploiting TNR's retail and distributor relationships. FAC ¶¶ 55–69. Playboy also interfered in TNR's relationships with retailers including Walmart by, among other things, selling its own products using TNR's account and shelf space with those retailers, to the detriment of TNR's ability to sell Playboy-branded products under the PLA. FAC ¶¶ 70–81. Playboy also withheld its approval of marketing plans and potential opportunities under the PLA. FAC ¶¶ 82–91.

On November 5, 2021, Playboy informed TNR that it was terminating the PLA, effective immediately, citing as its justification audit findings from July 2021. FAC ¶¶ 108–09.

**B.   TNR's First Amended Complaint and Playboy's Motion to Dismiss.**

TNR filed its original Complaint on December 17, 2022 (ECF No. 1), and its First Amended Complaint on March 16, 2022 (ECF No. 28 (the "FAC")).  TNR's FAC asserts claims against Playboy for: (a) violation of California's Franchise Relations Act and Franchise Investment Law (Counts I and II); (b) breach of contract (Count III); (c) breach of the implied covenant of good faith and fair dealing (Count IV); (d) violation of California's Unfair Competition Law ("UCL") (Count V); (e) tortious interference (Counts VI through VIII); (f) fraudulent inducement to contract (Count IX); and (g) conversion (Count X).

Playboy filed its Amended Motion to Dismiss on April 26, 2022.[2]  Playboy's Motion seeks to dismiss TNR's franchise claims (Counts I and II), UCL claim (Count V), tortious interference claims (Counts VI through VIII), fraudulent inducement claim (Count IX), and conversion claim (Count X).  Playboy's Motion does not seek to dismiss TNR's claims for breach of contract or breach of the covenant of good faith and fair dealing (Counts III and IV).

## II.   LEGAL STANDARD

FRCP 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Plaintiffs need not offer "detailed factual allegations" but must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557–58, 127 S. Ct. 1955, 1966–67 (2007).  To survive a Rule 12(b)(6) motion, a plaintiff's claim must merely be "plausible on its face," which means

---

[2] Playboy originally filed its Motion on April 25, 2022 (ECF No. 43), but re-filed on April 26 to address certain formatting issues identified by the Court (ECF No. 45-1).

that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

In evaluating Playboy's motion, all allegations of fact in the FAC are taken as true and must be construed in the light most favorable to the Plaintiff. *E.g.*, *OSU Student All. v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012); *Ehrilch v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 915 (C.D. Cal. 2010). The factual allegations of the complaint "need only plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011). Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence to support the allegations." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

### A.   The FAC Alleges That the PLA Created A Franchise Under California Law and the PLA Falls Within the Jurisdiction of Those Laws.

TNR has sufficiently pleaded the statutory elements of a franchise including the existence of a marketing plan and substantial association between Playboy's mark and the operation of TNR's business in selling Playboy-branded condoms and lubricants. TNR has also adequately alleged that TNR's business met the jurisdictional requirements of California's franchise laws, as the business operated within California and engaged in business activities directed at customers from within California.

#### 1.   The FAC Properly Alleges the PLA Satisfied Each Element Required Under California Law to Create a Franchise.

Counts I and II of the FAC assert claims against Playboy for wrongful termination of a franchise in violation of the California Franchise Investment Law ("CFIL") and failure to register a franchise in violation of the California Franchise Relations Act ("CFRA"). FAC ¶¶ 126-45. Both laws define a franchise essentially the same way:

> "[A] contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which: (1) A franchisee is granted the right to engage in the business of

4

offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and (2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and (3) The franchisee is required to pay, directly or indirectly, a franchise fee."

Cal. Corp. Code § 31005; *see also* Cal. Prof & Bus. Code § 20001.

The core public policy of the franchise laws is to "[protect] prospective franchisees" and to "prevent franchise sales where it is likely that the franchisor's promises would not be fulfilled." *Kim v. Servosnax, Inc.*, 10 Cal. App. 4th 1346, 1355–56 (1992). Like all protective statutes, the franchise laws must be "liberally construed to effect their object and quell the mischief at which they are directed." *Id.* at 1356. In determining whether an agreement creates a franchise, "each element should be construed liberally to broaden the group of investors protected by the law and to carry out the legislative intent." *Id.* at 1356. Thus, the parties' characterization of the agreement does not control the inquiry; the focus is whether the agreement satisfies the statutory elements necessary to constitute a franchise. *See, e.g.*, *People v. Kline*, 110 Cal. App. 3d 587, 594 (1980) (finding that a franchisor could not avoid the requirements of the franchise laws by describing the franchise agreement "in terms of sale of a 'business opportunity'"); *Gentis v. Safeguard Bus. Sys., Inc.*, 60 Cal. App. 4th 1294, 1301 (1998) (finding that a contract styled as a distributorship agreement constituted a franchise). The FAC properly alleges that the PLA satisfies each statutory element.

   a. *The FAC Properly Alleges the PLA Satisfied the Marketing Plan Element Because It Gave Playboy Significant Control*

5

*Over TNR's Business Associated With Playboy's Mark.*

Whether the marketing plan or system element is satisfied depends on how the provisions of the putative franchise agreement affect the "ability of the person engaged in the business to make decisions substantially without being *subject to restrictions or having to obtain the consent or approval of other persons*." DFPI Commissioner's Release 3-F (June 22, 1994) ("Release 3-F") ¶ 1.2.2.4 (citing Cal. Corp. Code § 31005); *Kline*, 110 Cal. App. 3d. at 593. The FAC alleges a series of controls at Playboy's disposal more significant than those the Ninth Circuit has found sufficient in past cases. *See, e.g.*, *Boats & Motor Mart v. Sea Ray Boats, Inc.*, 825 F.2d 1285, 1288–89 (9th Cir. 1987). The FAC sufficiently alleges several examples of Playboy's control over TNR's decisions about—and operation of—the Playboy-branded business:

- The PLA "conditioned TNR's ability to sell [Playboy's branded products] on receiving prior approval from Playboy, and it imposed a series of strict requirements" on virtually all aspects of what TNR manufactured and sold bearing Playboy's mark—including, but not limited to, product quality, packaging, product materials, labels, containers, artwork, printing, and images. FAC ¶ 28(c);

- The PLA required TNR to seek pre-approval of its marketing, advertising, and promotions activities in connection with the products, it also required TNR to spend "not less than 3% of either its net sales or minimum net sales, whichever was greater" on such efforts. FAC ¶ 28(d);

- The PLA prevented TNR from using "any subcontractor or supplier to manufacture or distribute the Products" without Playboy's prior approval, and it required TNR to engage those parties using Playboy's specified contracts; FAC ¶ 28(h);

- The PLA "required TNR to affix Playboy's official holograms to the Products for certain sales of Products outside the United States and to provide reports with certain metrics about hologram usage." FAC ¶ 28(f);

- The PLA limited TNR's exclusive rights under the PLA to the territory (FAC ¶ 28(b)), and it likewise "restricted TNR's use of advertising, promotion, sales materials to use in the Territory and restricted its distribution of the Products to those distribution channels specified in the PLA." FAC ¶ 28(e); and

- The PLA subjected TNR to a twice-yearly audit, dictated the manner in which TNR kept its books and retained financial records, and obligated TNR to bear the cost for an audit revealing certain deficiencies. FAC ¶ 28(g).

The FAC thus alleges that the PLA satisfies the marketing plan element.

        b. *The FAC Properly Alleges That TNR's Condom Business Was Substantially Associated with Playboy's Mark.*

The substantial association element "is satisfied where the franchisee is granted the right to use the franchisor's symbol *or* where the trademark is communicated to" the franchisee's customers. *Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.*, No. C 06-02584 CRB, 2008 WL 111223, at *5 (N.D. Cal. Jan. 9, 2008) (emphasis in original). The FAC alleges that both those conditions are met here: The PLA granted TNR the right to "engage in the business of selling branded condoms and lubricants bearing Playboy's mark, [*and* that mark] was communicated to TNR's customers via the packaging of the Products." FAC ¶ 118 (emphasis added). The FAC further alleges that sales of Playboy's branded sexual wellness products were the crux of TNR's sales relationships with major retailers like Walmart. *See* FAC ¶¶ 41–43, 73. The FAC thus alleges that the PLA satisfies the substantial association element, and coupled with the alleged facts to support the existence of a marketing plan, the FAC properly alleges that the PLA created a franchise.

      **2. The FAC Alleges Sufficient Facts to Satisfy the Jurisdictional Requirements of the Franchise Laws and No Exemptions Apply.**

Both the CFIL and CFRA limit their protections to franchisees that operate within California or engage in business activities directed at customers from within California. *See* Cal. Corp. Code § 31005; Cal. Bus. & Prof. Code § 20015. Those limitations aim to prevent franchisees operating wholly out of state from seeking the protection of

7

California's franchise laws. The FAC alleges that TNR "engaged in sales, leases, and business transactions directed toward customers from within California" through the activities of Nicholai Allen and his California-based marketing and sales company, Monarch Digital Media LLC. FAC ¶ 120. Mr. Allen was TNR's Global Sales Manager, and his principal place of business was in California. FAC ¶¶ 33, 120. The FAC further alleges that "TNR officials routinely engaged in transactions from California directed at customers" and that "TNR also paid rent to Playboy [for an office space in California]" on Allen's behalf. *Id*. Those allegations suffice to establish the jurisdiction of the CFIL and CFRA over TNR's claims against Playboy.

### B.  TNR's Tortious Interference Claims Are Adequately Pled.

#### 1.  TNR Adequately Alleges A Claim for Intentional Interference with Contractual Relations.

TNR's intentional interference with contractual relations claim is sufficiently pled, as it is centered on Playboy's wrongful interference in TNR's contracts and relationships with third party retailers and distributors—such as Walmart, Walgreens, CVS, and Core-Mark. FAC ¶¶ 168–74, 180–84, 190–92. The FAC alleges the separate existence of these contractual relationships (*see, e.g.*, FAC ¶¶ 171–73), the fact that Playboy itself was neither a party nor an agent of a party to these contracts (*see, e.g.*, FAC ¶¶ 174), and Playboy's wrongful interference in these relationships through conduct that is separate and apart from any breach of the PLA and independent of the act of interference itself (FAC ¶¶ 171–73, 181–83, 195–96). *See, e.g.* FAC ¶ 171 ("Playboy engaged in conduct independent of the actual interference by intentionally misrepresenting its products as belonging to TNR in a presentation to Walmart to disrupt TNR's Walmart agreement and improperly securing shelf space and sales rights at Walmart for Playboy's products.").[3] The FAC also alleges

---

[3] Further, TNR's contract claims center on Playboy's violations of the PLA, which permitted TNR to sell Playboy-branded condoms and lubricants. FAC ¶¶ 1, 16, 22, 148, 155. By contrast, TNR's tortious interference claims allege that Playboy engaged in wrongful conduct by, among other things, selling entirely separate products that were

8

that damages resulting from Playboy's interference in these third party contracts is separate and apart from contractual damages under the PLA. *See, e.g.*, FAC ¶ 171 ("These acts disrupted the contractual relationship between TNR and Walmart by depressing TNR's sales at Walmart, harming TNR's certified supplier status, brand, trust, and reputation with Walmart . . . and decreasing TNR's enjoyment of the benefits it derived from the Walmart agreement."). TNR therefore plausibly alleges each of the required elements and wrongful conduct that is separate and apart from any breach of contract. *See, e.g.*, *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (finding that factual allegations "need only 'plausibly suggest an entitlement to relief'"); *United Nat'l Maint. Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1008 (9th Cir. 2014) (citations omitted) ("California courts have repeatedly held that parties with an economic interest in a contractual relationship may be liable for intentional interference with that relationship."); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994); *Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344 (2005) (company potentially liable for interference in a contract between a partially-owned subsidiary and several of its employees); *Powerhouse Motorsports Grp. v. Yamaha Motor Corp.*, 221 Cal. App. 4th 867 (2013) (manufacturer may be liable for interference with a sales contract between a franchise operator and a potential new owner).

### 2. TNR Has Adequately Alleged Claims for Intentional And Negligent Interference with Prospective Economic Relations.

Playboy argues that TNR's intentional and negligent interference with prospective economic relations claims (Counts VII and VIII) are barred because they fail to allege acts that are "independently wrongful." MTD at 19. However, the FAC alleges additional wrongful conduct by Playboy, which is separate and independent of Playboy's breaches of the PLA. For example, the FAC alleges that Playboy: "disrupted TNR's prospective economic relationship with CVS . . . by (i) stealing TNR's professional and financial resources to have Allen present Playboy's products to CVS, using materials created by a

---

not within the scope of the PLA—climax delaying wipes—through TNR's account with retailers. FAC ¶¶ 66–67, 70–73.

presentation vendor paid for by TNR, in a TNR-exclusive presentation, (ii) violating the UCL by wrongfully inducing Allen to present Playboy's products in the aforementioned presentation; and (iii) misrepresenting itself to CVS . . . as being an authorized beneficiary of TNR's retailer relationship." FAC ¶ 181. The FAC further alleges that Playboy disrupted TNR's prospective economic relationship with Core-Mark by, among other things, "wrongfully inducing Allen to put a hold on TNR's negotiations with Core-Mark to force the negotiations to fail and undermine TNR's operations." FAC ¶ 182. These allegations constitute conduct independent of Playboy's breach of the PLA and are accordingly the basis for an appropriately pled claim for interference with prospective economic relations. *See, e.g.*, *Nat'l Med. Transportation Network v. Deloitte & Touche*, 62 Cal. App. 4th 412, 439–40 (1998).

### C. TNR Has Stated A Cognizable Claim for Fraudulent Inducement.

TNR has alleged a cognizable claim for fraudulent inducement.

*First*, the FAC alleges: (1) Playboy's obligations under the parties' agreements to act as a supportive licensor to TNR; and (2) Playboy withheld facts regarding the scope of the FAC from Allen, whom Playboy knew TNR relied upon for its US operations. FAC ¶ 200. The FAC also alleges that Playboy actively concealed material facts from TNR to induce its entry into the Eighth Amendment to the PLA, including that Playboy needed the Eighth Amendment to lawfully implement its CBD growth plan. FAC ¶¶ 45, 200. The FAC further explains that Playboy falsely represented that the Eighth Amendment needed to be signed urgently, which prevented TNR from seeking or consulting legal counsel prior to signing the document (FAC ¶¶ 50–53), and that TNR was required to rely on Allen due to its status as a new licensee (FAC ¶ 54). Under these circumstances, Playboy's non-disclosure violated duties owed to TNR, and is grounds for an actionable claim for fraudulent inducement. *See Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal. 4th 394, 428 (1996) (upholding fraud claim where "the alleged fraud of [defendant's] representatives, if true, would have deprived [plaintiffs] of a reasonable opportunity to learn the character and essential terms of the documents they signed.").

*Second*, TNR has adequately alleged a false representation: Playboy's false representation to Allen that CBD condoms and lubricants were excluded from the scope of the PLA, which Playboy falsely represented Allen had previously agreed with and knew Allen would relay to TNR (and on which TNR would reasonably rely). *See* FAC ¶ 201. Playboy's false representation was made in order to permit Playboy to retake CBD rights that had previously belonged to TNR. These allegations are sufficient to proceed past the pleading stage. *See Charpentier v. Los Angeles Rams Football Co., Inc.*, 75 Cal. App. 4th 301, 311–12 (1999) (permitting fraud claim to proceed where former season ticket holder alleged that professional football team falsely represented its intentions to remain in Los Angeles).

### D. TNR's Conversion Claim is Adequately Pled.

TNR's conversion claim is adequately pled because it seeks damages separate and apart from those sought by TNR's contract cause of action, and because TNR has identified a specific, quantifiable sum that was misappropriated by Playboy.

*First,* TNR alleges that Playboy wrongfully usurped TNR's resources to support its own products, for example, TNR's payment of $210,000 to Allen by poaching Allen to be a double agent to undermine TNR's operations. FAC ¶ 207(b). TNR's payment to Allen, which Playboy improperly usurped, is not an amount that is contemplated or within the scope of the PLA, and TNR's contract claim against Playboy provides no avenue for TNR to recover this amount. TNR's conversion claim, therefore, is not "predicated on a mere breach of contract." *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1043 (C.D. Cal. 2003).

*Second*, TNR alleges conversion of a specific and identifiable sum. *Welco Elec., Inc. v. Mora*, 223 Cal. 4th 202, 216 (2014) ("A conversion claim does not require that a specific lump sum of money be entrusted to defendant; the plaintiff merely must prove a specific, identifiable sum of money that was taken from it."); *see also* FAC ¶ 207. Further, TNR alleges that the specific sums set forth in the FAC were misappropriated by Playboy and used for costs that are outside the scope of the PLA. FAC ¶ 207. This constitutes conversion as it is "interfer[ence] with [TNR's] possessory interest in a specific,

identifiable sum," rather than "the simple failure to pay money owed." *Voris v. Lampert*, 7 Cal. 5th 1141, 1151 (2019).

### E.   TNR Is Entitled To Allege An Unfair Competition Claim.

TNR's UCL claim is premised on conduct for which it has no adequate remedy at law, and which is independent of any of the damages claims it asserts elsewhere. For example, TNR alleges that Playboy "misrepresent[ed] Playboy's products as TNR products to usurp TNR's goodwill and take advantage of TNR's relationships with one or more major retailers" and "deceptively infiltrating TNR's earned and designated shelf space at one or more major retailers." FAC ¶ 160. Playboy does not contend that TNR seeks damages based on this conduct elsewhere.

The relief sought by TNR under its section 17200 claim is restitutionary relief—specifically restitutionary disgorgement (FAC ¶ 166)—that is separate and independent from the contract and tort damages TNR seeks elsewhere. For example, the FAC alleges that Playboy violated the UCL by, among other things, deceptively obtaining payment from TNR for expenses that were used for non-TNR products outside the of PLA, and infiltrating TNR's shelf space at retailers for the benefit of those same products. FAC ¶ 160. This is conduct that is separate and apart from the contractual breaches alleged by TNR elsewhere in the FAC (see, e.g., FAC ¶ 148), and TNR seeks restitutionary disgorgment from Playboy for amounts TNR expended or was deprived based on these unfair business practices. *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. App. 4th 1134, 1150 (2003) ("[The UCL] provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices."). This is consistent with California precedent on remedies permitted under the UCL as TNR seeks to restore money it was deprived as a result of Playboy's unfair practices, and does not simply seek "duplicative liability" for its tortious interference claims as California courts have cautioned against. *See, e.g.*, *Korea Supply Co.*, 29 Cal. App. 4th at 1143.

## IV. CONCLUSION.

For the foregoing reasons, the Court **DENIES** Playboy's Motion to Dismiss in its entirety.

DATED: _____   _____
John F. Walter
United States District Judge