QUINN EMANUEL URQUHART & SULLIVAN, LLP
Marshall M. Searcy III (Bar No. 169269)
marshallsearcy@quinnemanuel.com
Scott B. Kidman (Bar No. 119856)
scottkidman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendants Playboy Enterprises International, Inc., and Products Licensing LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THAI NIPPON RUBBER INDUSTRY PUBLIC LIMITED COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>PLAYBOY ENTERPRISES INTERNATIONAL, INC., PRODUCTS LICENSING LLC, and NICHOLAI ALLEN,<br><br>Defendants. | Case No. 2:21-CV-09749-JFW<br><br>**[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>The Hon. The Hon. John F. Walter<br><br>Date: May 23, 2022 [appearance not required]<br><br>Time: 1:30 p.m.<br><br>Crtrm.: 7A<br><br>Pre-Trial Conference: September 1, 2023<br><br>Trial Date: September 26, 2023 |

Before the Court's is Defendants Playboy Enterprises International, Inc. and Products Licensing LLC (together "Playboy") filed a Partial Motion to Dismiss Plaintiff Thai Nippon Rubber Industry Public Limited Co.'s ("TNR") First Amended Complaint ("Motion") (Dkt. 45). After considering the moving, opposing, and reply papers, and the arguments therein, the Court **GRANTS** Playboy's Motion.

I.  DISCUSSION

Playboy seeks to dismiss TNR's claims for violations of the franchise laws, tortious interference with actual and prospective economic relations, fraudulent inducement, conversion, and unfair competitive practices. Mot. 1–2. The Court addresses these claims seriatim.

**A. TNR's Franchise Claims Fail**

TNR asserts claims against Playboy under California Corporation Code §§ 20000 *et seq.* ("CRFA") and California Corporations Code §§ 31000 *et seq.* (CFIL). FAC ¶¶ 139–145. The CRFA and CFIL define a "franchise" as:

> [A] contract of agreement, either expressed or implied, whether oral or written, between two or more persons by which: (1) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and (2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and (3) The franchisee is required to pay, directly or indirectly, a franchise fee.

CFIL § 31005; *accord* CFRA § 20001.

The Commissioners of Business Oversight interpretation of these factors is afforded "great weight," although the "final determination of what constitutes a franchise rests with the courts." *Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*, No. SACV 17-1692 JVS (KESx), 2018 WL 6190592, at *3 (C.D. Cal. Aug. 7, 2018); *See* Department of Financial Protection & Innovation, *Release 3–F: When does an Agreement Constitute a "Franchise"* (June 22, 1994) ("Release").

### 1. California's Franchise Laws Do Not Apply

Section 31105 of the CFIL provides that "[any franchise] shall be exempted from the provisions of Chapter 2 … if all locations from which sales, leases or other transactions between the franchised business and its customers are made, or goods or services are distributed, are physically located outside the state." CFIL § 31105. CFRA has similar territorial limitations: "The provisions of this chapter apply to any franchise where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state." CFRA § 20015.

TNR concedes it is not domiciled in California. FAC ¶ 3. Therefore, this issue turns on whether TNR "is or has been operated in this state." CFRA § 20015; *accord* CFIL § 31105.

TNR alleges that "TNR officials routinely engaged in transactions from California directed at customers." FAC ¶ 120. However, absent accompanying factual allegations, the Court cannot credit this conclusory allegation. And a charitable reading of Complaint do not suggest that TNR has operated in California. For instance, TNR's alleges that it "[e]ngaged in sales, leases, and business transactions *directed* toward customers from with the state of California. FAC ¶ 120 (emphasis added). TNR has not cited and the Court has not found authority supporting the idea that targeting California customers constitutes operating within California.

TNR also admits it lacked a sales representatives or distribution network in the United States" as of 2018. FAC ¶ 33. At no point does the complaint suggest that TNR developed a U.S. presence—let alone operations in California—after 2018. *See generally* FAC. Quite the contrary. TNR alleges it "engaged" Defendant Nicholai Allen to manage its U.S.-based business. FAC ¶¶ 33, 120. This reasonably suggests that TNR lacked a California presence. Similarly, TNR does not allege that the it negotiated (or performed under) its agreements with Walmart, Caremark, or any of the other third-parties were in California.

Accordingly, the Court finds that TNR has not alleged enough facts to support the plausibility of the claim that TNR has ever operated out of California.

### 2. *The Requisite Level of Control is Lacking*

To plead the existence of a franchise relationship, TNR must allege that Playboy exercised a requisite level of control over its marketing plan. The Commissioners of Business Oversight interpretation of this factors is afforded "great weight." *Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*, No. SACV 17-1692 JVS (KESx), 2018 WL 6190592, at *3 (C.D. Cal. Aug. 7, 2018); *See* Department of Financial Protection & Innovation, *Release 3–F: When does an Agreement Constitute a "Franchise"* (June 22, 1994) ("Release").

As relevant here, the Release provides that the question of substantial association "must be determined … based upon an evaluation of the provisions contained" within the agreement and "the effect which these provisions have as a whole on the ability of the person engaged in the business to make decisions substantially without being subject to restrictions or having to obtain the consent or approval of other persons. This determination may be made in the light of applicable principles of general law and of customs prevailing in the particular trade or industry." Release ¶ 1.2.4. "[T]he requirement of a marketing plan or system prescribed in substantial part by the franchisor is not satisfied merely because an agreement imposes upon the operator of a business procedures or techniques which are customarily observed in business relationships in the particular trade or industry, even though, to some extent, they may restrict the freedom of action or the discretion of the operator." *Id.* ¶ 2.2.6.

TNR alleges that Playboy was "in a position of significant control over TNR's use of Playboy's mark" pursuant to the PLA. FAC ¶ 115. TNR was required to obtain "prior approval from Playboy" for marketing materials in Playboy's specified format, to" follow the approved marketing plan," to "affix Playboy's official holograms to the Products" and to allow Playboy to audit its books twice a year. FAC ¶¶ 25–29. TNR

does not allege that Playboy required TNR to abide by a marketing plan that Playboy created or that Playboy marketed "availab[ility] of a successful market plan" to induce TNR's novation of the PLA.  *Cf.* Release ¶ 2.2.3.

While these facts show that Playboy had *some* control over TNR's marketing activities, the Court cannot find that these allegations reasonably suggest the existence of a franchise relationship.  According to the Commissioner, courts must consider allegations of control "in light of applicable principles of general law and of customs prevailing in the particular trade or industry." Release ¶ 2.2.4.  Playboy argues that these controls are common features of licensing agreements and cites *Hollywood Athletic Club Licensing Corp. v. GHAC–CityWalk*, 938 F. Supp. 612, 615 (C.D. Cal. 1996) for the proposition that a licensor must retain some level of control over their intellectual property to avoid the risk of abandonment.  *See* Mot. 10–11.  Even indulging even reasonable inference in TNR's favor, the Court finds that these allegations are susceptible of a most natural explanation, *see Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009):  Playboy sought to retain sufficient control over its trademark.  This factor, while not dispositive, weighs against the finding of a franchise relationship.  *See* Release ¶ 2.2.4.

*Boat & Motor Mart v. Sea Ray Boats, Inc.*, 825 F.2d 1285 (9th Cir. 1987) further suggests that the licensing agreement does not give rise to a franchise relationship.  There, the Ninth Circuit found that plaintiffs had demonstrated a dispute of material fact sufficient for the franchise claims to proceed to trial.  The franchisor provided the franchisee with "a model marketing program … press, kits, promotional tools, and marketing advice." *Id.* at 1287.  It gave the plaintiff "detailed instructions" on what its salesman would do at boat shows, including specific instructions on how to set up the booth, how to clean the boats, when to clean the boats, and how the salesmen should dress. *Id.*  Further, the franchisor required the plaintiff to purchase at its own expense films, video cassettes, banners, posters, floats, hats, visors and T-shirts that franchisor had designed. *Id.*  None of these factors are present here.  *See*

*generally* FAC.  There is no suggestion that Playboy imposed a marketing plan on TNR, required it to purchase Playboy designed advertisements, or sought to micro-manage how TNR marketed its products.  While it is undisputed that TNR was required to obtain Playboy's approval for marketing materials and new product offerings, these rights, without more, are best understood as a Playboy's attempt, as licensor, to retain sufficient control over its mark, which TNR agrees constitutes valuable property.  *See* FAC Ex. 1, ¶¶ 2(b)(i),(h).

Accordingly, as TNR has failed adequately plead the existence of franchise relationship, the Court dismisses the first and second causes of action.

### B. TNR's Interference Claims Fail

To state a claim for interference, a plaintiff must adequately plead that the defendant "not only interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, USA, Inc*., 11 Cal. 4th 376, 393 (1995). For an act to be sufficiently independently wrongful, it must be "unlawful, that is, … it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co*., 29 Cal.4th at 1159; *Drink Tank Ventures LLC v. Al Bottles*, 71 Cal. App. 5th 528, 539 (2021) (The requirement of independently wrongful conduct "sensibly redresses the balance between providing a remedy for predatory that is, wrongful economic behavior" (on the one hand) and keeping legitimate business competition outside litigative bounds (on the other))." "[T]he essential nature of the conduct determines whether the action sounds in contract or in tort." *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am*., 115 Cal. App. 4th 168, 182 (2004).

After careful consideration of the pleadings in the light most favorable to TNR, the Court finds that the gravamen of this action sounds in contract.  In the complaint, TNR alleges that Playboy engaged in conduct that violated the PLA.  The PLA and Playboy's alleged breach thereof are the leitmotif of the complaint.  *See* FAC ¶¶ 1–2,

10–17, 19–28, 34–38, 44, 82–91, 92–106, 107–112, 146–156. Looking at the conduct giving rise to TNR's claims as required by *JRS Products*, the Court finds that the allegations in the complaint do not plausibly suggest that Playboy engaged in "independently wrongful conduct" that can be disentangled from TNR's contractual claims. To the extent Playboy has harmed TNR, TNR's remedies arise from contract law.

By way of illustration, TNR complains that Playboy improperly competed with TNR's products. *See, e.g.,* FAC ¶ 59. Such conduct, if true, could potentially violate the exclusive license TNR was granted under the PLA. Similarly, TNR alleges that it was harmed because Playboy improperly withheld approval over marketing materials and products. *See, e.g.*, FAC ¶¶ 84–86, 115, 117, 183. These allegations, if true, could potentially constitute a violation of Playboy's implied duties under the PLA. *See Kendall v. Ernest Pestana*, 40 Cal. 3d 488, 501 (1985). Indeed, TNR expressly asserts this conduct in support of its claim for a breach of the implied covenant of good faith and fair dealing. *See* FAC ¶ 155(d).

Further, TNR complains that Playboy improperly requested reimbursements for expenses that were not authorized. *See, e.g.*, FAC ¶¶ 69, 155, 160, 173, 205. A fair reading of the complaint suggests that these payments were made by TNR to Allen pursuant to the terms of the licensing agreement. FAC ¶ 211(Playboy knew or had reason to know that the payments *Freedom sent to Playboy* actually belonged to TNR) (emphasis added). Given that TNR's allegations suggest potential violations of the licensing agreement that governs the relationship between Allen, TNR, and Playboy, the Court is unable to find that TNR has pleaded the existence of an independently wrongful act sufficiently. *See, e.g.*, *JRS Products*, 115 Cal. App. 4th at 182; *Korea Supply.*, 29 Cal. 4th at 1150; *State Ready Mix, Inc. v. Moffatt & Nichol*, 232 Cal. App. 4th 1227, 1232 (2015) ("[Plaintiff] cannot recast [its] complaint for breach of contract/breach of warranty as a tort action. 'A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.'")

(quoting *Aas v. SuperiorCourt*, 24 Cal. 4th 627, 643 (2000), *superseded by statute on other grounds*)).

Accordingly, the Court concludes that TNR has failed to state claims for intentional interference with prospective economic advantage and negligent interference with economic advantage and, thus, TNR's sixth, seventh, and eighth causes of action are dismissed.

### C. TNR's Fraudulent Inducement Claim Fails

"A claim for fraud in the inducement requires the following elements: '(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *McColgan v. Mutual of Omaha Ins. Co.*, 4 F. Supp. 3d 1228 1233 (E.D. Cal. 2014) (*quoting Hinesley v. Oakshade Town Ctr.,* 135 Cal. App. 4th 289, 294 (2005)). "Justifiable reliance in a fraud action is ordinarily a question of fact, '[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion.'" *Id.* (quoting *Blankenheim v. E.F. Hutton & Co.*, 217 Cal.App.3d 1463, 1475 (1990)).

TNR's complaint fails to show that it justifiably relied on Playboy's representations as an inducement to signing the Eighth Amendment. TNR alleges that the PLA "clearly grant[ed] TNR a license to … CBD condoms and lubricants." FAC ¶ 49. TNR alleges that its CEO, Khun Amorn, signed the Eighth Amendment, pursuant to which it lost its license to CBD condoms and lubricants. TNR reasons that Playboy prevented Khun Amorn from seeking or obtaining legal counsel prior to signing [Eighth Amendment]" by falsely claiming that the amendment was urgently needed. But TNR's account does not show that Khun Amorn justifiably relied on Playboy's representations. There is no suggestion that Playboy prevented or discouraged Khun Amorn from seeking counsel or that Playboy indicated that the "urgency" of the situation would not allow time to do so. *See* FAC ¶ 51–54.

-8-
[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Similarly, TNR does not suggest that Playboy concealed the clear, unambiguous terms of the Eighth Amendment.

Under California law, it is well settled that a court may consider an individual's "knowledge, experience and competence" in assessing whether reliance is justifiable. *In re Kirsh*, 973 F.2d 1454, 1461 (9th Cir. 1992). Here, TNR alleges it is an international manufacturing company that has been publicly traded on the Thailand stock exchange since 2016 that invested "tens of millions" of dollars into its relationship with Playboy. FAC ¶¶ 10, 1. Khun Amorn serves as TNR's Chief Operating Officer, FAC ¶ 44, and thus his conduct must be assessed against this backdrop.

*First*, the Court is not persuaded that Playboy prevented Khun Amorn from obtaining the advice of counsel by claiming that the Eighth Amendment should be executed urgently. Simply stated, it is not plausible that the CEO of an internationally traded company would modify an agreement worth tens of millions of dollars without obtaining the advice of counsel simply because the counter-party claims that it was urgent. Holding Khun Amorn to this standard is consistent with California's applicable jurisprudence. For instance, in *In re Kirch*, the Ninth Circuit applied California law and found that it was unreasonable for an attorney to avoid obtaining a title report in a transaction for real property based on the counter-parties representation that a title report was not necessary. *In re Kirsh*, 973 F.2d 1454, 1461 (9th Cir. 1992). Similarly, the Court is not persuaded that a publicly traded company's Chief Operating Officer would modify a licensing agreement of strategic importance based on Allen's word alone. *Id.*; *see also Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 415 (1996).

Accordingly, the Court dismisses this claim.

### D. TNR's Conversion Claim Fails

Conversion is the wrongful exercise of dominion over the property of another. *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014). A *convertible* property

interest requires three elements: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKx)2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019) (quoting *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003)). "Money may be the subject of conversion if the claim involves a specific, identifiable sum; it is not necessary that each coin or bill be earmarked." *Welco*, 223 Cal. App. 4th at 209.

Here, TNR claims that between November 2019 and August 31, 2021, TNR converted monies "exceeding $497.860.75" that full "total of which can be ascertained and confirm by third-party invoices." FAC ¶¶ 207. This allegation cannot form the basis of a conversion action because TNR has failed to allege the conversion of a specific sum of money. According to *Welco*, which TNR's cites with approval, "[a] plaintiff must specifically identify the amount of money converted. 223 Cal. App. 4th at 217. In this case, stating that the amount "exceed[s] $497.860.75" does not properly plead a specific dollar amount. FAC ¶ 207. Federal courts have previously dismissed conversion claims where the plaintiff fails to plead a definite sum. *E.g.*, *Mami Nutraceuticals, LLC v. Nat'l Merch. Ctr., Inc.*, No. SACV1601308JVSJCGX, 2017 WL 3081823, at *6 (C.D. Cal. June 9, 2017) ("In this case, stating the amount withheld as over $500,000 does not properly plead a specific dollar amount …") (citing *Baxter v. King*, 23 P. 172, 172 (Cal. Dist. Ct. App. 1927)); *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-CV-00155-BAS DHB, 2015 WL 1013704, at *9–10 (S.D. Cal. Mar. 9, 2015) (dismissing conversion claim based on overcharges "in excess of $160,000" because the "dispute is more akin to a dispute over a bill than it is to outright theft" and "a failure to pay money owed or claims arising out of an alleged simple overcharge cannot be the basis for a conversion claim".). On this basis, the Court finds that dismissal of TNR's conversion claim is warranted.

### E. TNR's UCL Claim Fails

TNR claims that Playboy is liable for engaging in unfair business practices in violation of UCL § 17200. FAC ¶¶ 157–166. Playboy argues this claim is not cognizable because TNR's other claims demonstrate that it possesses adequate remedies and therefore TNR cannot plead a necessary element of a UCL claim. Mot. 24–25. TNR resists this conclusion, citing its request for restitutionary disgorgement, which is a "separate and independent from the contract and tort damages TNR seeks elsewhere." Resp. 24–25 (citing FAC ¶ 166). The Court is persuaded that TNR has failed to adequately plead that lack an adequate remedy at law and dismisses the UCL claim on this basis.

To state a claim under the UCL, the plaintiff must adequately plead "that [it] lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839–44 (9th Cir. 2020) (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). "Courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole." *Franckowiak v. Scenario Cockram USA, Inc.*, No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2 (C.D. Cal. Nov. 30, 2020) (Walter, J.). A failure to plead the "the basic requisites" of its UCL claim is grounds for dismissal. *Sonner*, 971 F.3d at 839; *see, e.g.*, *id.* ("[U]nder *Sonner*, plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law."); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) (dismissing UCL claim because "Plaintiffs do not plead that they have inadequate remedies at law … or otherwise distinguish their request for restitution from their request for damages.").

At no point in their operative pleadings does TNR plead a lack of adequate legal remedy. *See generally* FAC. *Sonner* teaches that courts should dismiss UCL claim where plaintiffs fail to plead a lack of adequate remedies. *Franckowiak*, No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2. Instead, TNR suggests that Playboy must demonstrate the inadequacy of its remedies. *See* Resp. 24. Not so. As

-11-
[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

plaintiff, TNR—not Playboy—has the burden of pleading "the basic requisites" of its UCL claim.  *Sonner*, 971 F.3d at 844.

Accordingly, as TNR has failed to allege a necessary element for a UCL claim, the Court dismisses the eleventh cause of action.

## II.  CONCLUSION

For the reasons herein, the Court grants Playboy's Motion and dismisses TNR's claims for violations of the franchise laws, tortious interference with actual and prospective economic relations, fraudulent inducement, conversion, and unfair competitive practices

**SO ORDERED.**

**THE HON. JOHN F. WALTER**
**UNITED STATES DISTRICT JUDGE**

| | | |
|---|---|---|
| 1 | DATED: May 11, 2022 | QUINN EMANUEL URQUHART & |
| 2 | | SULLIVAN, LLP |
| 6 | | By _____ |
| 7 | | MARSHALL M. SEARCY III |
| 8 | | Attorneys for Defendants Playboy |
| 9 | | Enterprises International, Inc., and |
| 10 | | Products Licensing LLC |

# CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2022, I electronically filed this **[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** using the CM/ECF system which will send notification of such to all parties. I also certify the document was served via U.S. Mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access the document through the CM/ECF system.

By: */s/ Marshall Searcy*
Marshall Searcy