5/11/2022 5:30:39 PM

## Compare Results

| Old File: | | New File: |
|---|---|---|
| **Playboy's Proposed Statement of Decision Granting Mot. Dismiss FAC.pdf** | versus | **2022-05-11. Playboy's Proposed Statement of Decision Granting Mot. Dismiss FAC.pdf** |
| 31 pages (328 KB) | | 14 pages (244 KB) |
| 5/11/2022 3:35:59 PM | | 5/11/2022 4:43:52 PM |

| Total Changes | Content | | Styling and Annotations | |
|---|---|---|---|---|
| **271** | **57** | Replacements | **13** | Styling |
| | **41** | Insertions | **40** | Annotations |
| | **120** | Deletions | | |

[ Go to First Change (page 1) ]

Summary of Comments on Exhibit B - Redline Comparison of ECF No. 49 and ECF No. 60 (002).pdf



Page: 1

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    Marshall M. Searcy III (Bar No. 169269)
  marshallsearcy@quinnemanuel.com
  Scott B. Kidman (Bar No. 119856)
3    scottkidman@quinnemanuel.com
4  865 South Figueroa Street, 10th Floor
  Los Angeles, California 90017-2543
  Telephone: (213) 443-3000
5  Facsimile: (213) 443-3100

6  Attorneys for Defendants Playboy
  Enterprises International, Inc., and
7  Products Licensing LLC

8  UNITED STATES DISTRICT COURT

9  CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10  THAI NIPPON RUBBER INDUSTRY
  PUBLIC LIMITED COMPANY,
11
       Plaintiff,
12
    vs.
13
  PLAYBOY ENTERPRISES
14  INTERNATIONAL, INC.,
  PRODUCTS LICENSING LLC, and
15  NICHOLAI ALLEN,
16       Defendants.

Case No. 2:21-CV-09749-JFW

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

The Hon. The Hon. John F. Walter

Date: May 23, 2022 [appearance not required]

Time: 1:30 p.m.

Crtrm.: 7A

Pre-Trial Conference: September 1, 2023

Trial Date:    September 26, 2023

17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Text Attributes Changed — Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".
Text Attributes Changed — Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".
Text Inserted — "3"
Text Attributes Changed — Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".
Text Deleted — "3"
Text Deleted — "8"
Text Attributes Changed — Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".
Text Replaced — [Old]: "9 10" [New]: "8 9"
Text Attributes Changed — Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".
Text Attributes Changed — Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".
Text Replaced — [Old]: "11 12 Plaintiff, vs. PLAYBOY ENTERPRISES INTERNATIONAL, INC., PRODUCTS LICENSING LLC, and NICHOLAI ALLEN, 13 14 15 16 Defendants. Date: May 23, 2022 [appearance not required] 17 18 Time: 1:30 p.m. Crtrm.: 7A Pre-Trial Conference: September 1, 2023 Trial Date: September 26, 2023 19 20" [New]: "Date: May 23, 2022 [appearance not required] Time: 1:30 p.m. Crtrm.: 7A Pre-Trial Conference: September 1, 2023 10 11 Plaintiff, vs. PLAYBOY ENTERPRISES INTERNATIONAL, INC., PRODUCTS LICENSING LLC, and NICHOLAI ALLEN, Defendants. 12 13 14 15 16 17 18 19 20 Trial Date: September 26, 2023"

~~Before the Court's is Defendants Playboy Enterprises International, Inc. and Products Licensing LLC (together "Playboy") filed a Partial Motion to Dismiss Plaintiff Thai Nippon Rubber Industry Public Limited Co.'s ("TNR") First Amended Complaint ("Motion") (Dkt. 45). After considering the moving, opposing, and reply papers, and the arguments therein, the Court **GRANTS** Playboy's Motion.~~

**I.  DISCUSSION**

~~Playboy seeks to dismiss TNR's claims for violations of the franchise laws, tortious interference with actual and prospective economic relations, fraudulent inducement, conversion, and unfair competitive practices. Mot. 1–2. The Court addresses these claims seriatim.~~

**A.  TNR's Franchise Claims Fail**

~~TNR asserts claims against Playboy under California Corporation Code §§ 20000 et seq. ("CRFA") and California Corporations Code §§ 31000 et seq. (CFIL). FAC ¶¶ 139–145. The CRFA and CFIL define a "franchise" as:~~

> ~~[A] contract of agreement, either expressed or implied, whether oral or written, between two or more persons by which: (1) A franchise is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and (2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and (3) The franchise is required to pay, directly or indirectly, a franchise fee.~~

CFIL § 31005; *accord* CRFA § 20001.

The Commissioners of Business Oversight interpretation of these factors is afforded "great weight," although the "final determination of whether a franchise rests with the courts." *Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*, No. SACV 17-1692 JVS (KESx), 2018 WL 6190592, at *3 (C.D. Cal. Aug. 7, 2018); *See* Department of Financial Protection & Innovation, *Release 3–F: When does an Agreement Constitute a "Franchise"* (June 22, 1994) ("Release").

---

**Page: 2**

**Text Attributes Changed**
Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

**Text Attributes Changed**
Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

**Text Replaced**
[Old]: "On April 26, 2022,"
[New]: "Before the Court's is"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

**Text Replaced**
[Old]: "On May 2, 2022, TNR filed a response in opposition ("Opposition") (Dkt. 50). Thereafter, on May 9, 2022, Playboy filed its reply in support of the Motion ("Reply") (Dkt. 52). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found these matters appropriate for submission on the papers without oral argument. The matters were, therefore, removed from the Court's May 23, 2022 hearing calendar and the parties were given advance notice. Dkt. 51. After considering the moving, opposing, and reply papers, and the arguments therein, the Court GRANTS Playboy's Motion for the reasons below."
[New]: "After considering the moving, opposing, and reply papers, and the arguments therein, the Court GRANTS Playboy's Motion."

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

**Text Inserted**
"I. DISCUSSION"

**Text Inserted**
"Playboy seeks to dismiss TNR's claims for violations of the franchise laws, tortious interference with actual and prospective economic relations, fraudulent inducement, conversion, and unfair competitive practices. Mot. 1–2. The Court addresses these claims seriatim. A."

**Text Inserted**
"TNR's Franchise Claims Fail TNR asserts claims against Playboy under California Corporation Code §§ 20000 et seq."

**Text Inserted**
"("CRFA") and California Corporations Code §§ 31000 et seq, (CFIL)."

**Text Inserted**
"FAC ¶¶ 139–145."

**Text Inserted**
"The CRFA and CFIL define a "franchise" as:"

**Text Replaced**
[Old]: "21 22 23 24 TNR is an OEM manufacturer of high-quality condoms and lubricants that operates in Thailand."
[New]: "[A] contract of agreement, either expressed or implied, whether oral or written, between two or more persons by which: (1) A franchise is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and (2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor"

**Text Deleted**
"I."

**Text Deleted**
"BACKGROUND 1"

**Text Deleted**
"FAC 3."

**Text Replaced**
[Old]: "In or around 2018, TNR acquired an exclusive license to manufacture and distribute condoms and lubricants bearing Playboy's mark. FAC ¶¶ 19–20. TNR paid approximately $15 million to acquire this license and invested more than $13"
[New]: "or its affiliate; and (3) The franchisee is required to pay, directly or indirectly, a franchise fee. 21 22"

Comments from page 2 continued on next page

Before the Court's is Defendants Playboy Enterprises International, Inc. and Products Licensing LLC (together "Playboy") filed a Partial Motion to Dismiss Plaintiff Thai Nippon Rubber Industry Public Limited Co.'s ("TNR") First Amended Complaint ("Motion") (Dkt. 45).  After considering the moving, opposing, and reply papers, and the arguments therein, the Court **GRANTS** Playboy's Motion.

## I.   DISCUSSION

Playboy seeks to dismiss TNR's claims for violations of the franchise laws, tortious interference with actual and prospective economic relations, fraudulent inducement, conversion, and unfair competitive practices.  Mot. 1–2.  The Court addresses these claims seriatim.

### A.  TNR's Franchise Claims Fail

TNR asserts claims against Playboy under California Corporation Code §§ 20000 *et seq.* ("CRFA") and California Corporations Code §§ 31000 *et seq.* (CFIL). FAC ¶¶ 139–145.  The CRFA and CFIL define a "franchise" as:

> [A] contract of agreement either expressed or implied, whether oral or written, between two or more persons by which: (1) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and (2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and (3) The franchisee is required to pay, directly or indirectly, a franchise fee.

CFIL § 31005; *accord* CFRA § 20001.

The Commissioners of Business Oversight interpretation of these factors is afforded "great weight," although the "final determination of what constitutes a franchise rests with the courts."  *Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*, No. SACV 17-1692 JVS (KESx), 2018 WL 6190592, at *3 (C.D. Cal. Aug. 7, 2018);  *See* Department of Financial Protection & Innovation, *Release 3–F: When does an Agreement Constitute a "Franchise"* (June 22, 1994) ("Release").

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

1. California's Franchise Laws Do Not Apply

Section 31105 of the CFIL provides that "[any franchise] shall be exempted from the provisions of Chapter 2 … if all locations from which sales, leases or other transactions between the franchised business and its customers are made, or goods or services are distributed, are physically located outside the state." CFIL § 31105. CFRA has similar territorial limitations: "The provisions of this chapter apply to any franchise where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state." CFRA § 20015.

TNR concedes it is not domiciled in California. FAC ¶ 3. Therefore, this issue turns on whether TNR "is or has been operated in this state." CFRA § 20015; *accord* CFIL § 31105.

TNR alleges that "TNR officials routinely engaged in transactions from California directed at customers." FAC ¶ 120. However, absent accompanying factual allegations, the Court cannot credit this conclusory allegation. And a charitable reading of Complaint do not suggest that TNR has operated in California. For instance, TNR's alleges that it "[e]ngaged in sales, leases, and business transactions *directed* toward customers from with the state of California." FAC ¶ 120 (emphasis added). TNR has not cited and the Court has not found authority supporting the idea that targeting California customers constitutes operating within California.

TNR also admits it lacked a sales representatives or distribution network in the United States" as of 2018. FAC ¶ 33. At no point does the complaint suggest that TNR developed a U.S. presence—let alone operations in California—after 2018. *See generally* FAC. Quite the contrary. TNR alleges it "engaged" Defendant Nicholai Allen to manage its U.S.-based business. FAC ¶¶ 33, 120. This reasonably suggests that TNR lacked a California presence. Similarly, TNR does not allege that the it negotiated (or performed under) its agreements with Walmart, Caremark, or any of the other third-parties were in California.

-3-

---

**Page: 3**

Graphic Element Inserted

Text Inserted
"California's Franchise Laws Do Not Apply"

Text Inserted
"1."

Text Inserted
"Section 31105 of the CFIL provides that "[any franchise] shall be exempted from the provisions of Chapter 2 … if all locations from which sales, leases or other transactions between the franchised business and its customers are made, or goods or services are distributed, are physically located outside the state." CFIL § 31105. CFRA has similar territorial limitations: "The provisions of this chapter apply to any franchise where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state." CFRA § 20015. TNR concedes it is not domiciled in California. FAC ¶ 3. Therefore, this issue turns on whether TNR "is or has been operated in this state." CFRA § 20015; accord CFIL § 31105. TNR alleges that "TNR officials routinely engaged in transactions from California directed at customers." FAC ¶ 120."

Text Inserted
"However, absent accompanying factual allegations,"

Text Replaced
[Old]: "million to perform under the operative licensing agreements. FAC ¶¶ 13, 138. A suite of documents governs TNR's duties as licensee and Playboy's rights as licensor. At issue are the Product License Agreement ("PLA"), as amended over time, and the Sale and Purchase Agreement ("SPA"). The PLA granted TNR the right to "design, manufacture, advertise, promote, sell, and distribute condoms bearing Playboy's mark in specified territories worldwide. FAC ¶¶ 11, 25. The PLA granted Playboy the right to receive royalty payments based on TNR's sales. FAC ¶ 27. The PLA also required TNR to submit its proposed "advertising/promotional and marketing plan for Playboy's approval on a yearly basis, in Playboy's specified format" and "follow the approved marketing plan in connection with sales of the product." FAC ¶ 28. The SPA granted TNR an exclusive license for condoms and lubricants bearing Playboy's mark, a license that United Medical Devices ("UMD") initially acquired. FAC ¶ 11. The SPA included several terms meant to facilitate the transfer of UMD's operations to TNR. FAC ¶ 20. Clause 4.4 is one such provision. It required TNR to employ Nicholai Allen ("Allen") as an integral part of its U.S. operations. FAC¶ 21. All parties to the licensing agreement contemplated that Allen and his companies Monarch Digital Media LLC and Freedom Brands Corp. would"
[New]: "the Court cannot credit this conclusory allegation. And a charitable reading of Complaint do not suggest that TNR has operated in California. For instance, TNR's alleges that it "[e]ngaged in sales, leases, and business transactions directed toward customers from with the state of California. FAC ¶ 120 (emphasis added). TNR has not cited and the Court has not found authority supporting the idea that targeting California customers constitutes operating within California. TNR also admits it lacked a sales representatives or distribution network in the United States" as of 2018. At no point does the complaint suggest that TNR developed a U.S. presence—let alone operations in California—after 2018. See generally FAC. Quite the contrary. TNR alleges it "engaged" Defendant Nicholai Allen to manage its U.S.-based business. FAC ¶¶ 33, 120. This reasonably suggests that TNR lacked a California presence. Similarly, TNR does not allege that the it negotiated (or performed under) its agreements with Walmart, Caremark, or any of the other third-parties were in California."

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT."

Graphic Element Deleted

1   ~~Accordingly, the Court finds that TNR has not alleged enough facts to support~~

2   ~~the plausibility of the claim that TNR has ever operated out of California.~~

3   ~~2. The Requisite Level of Control is Lacking~~

4   ~~To plead the existence of a franchise relationship, TNR must allege that~~

5   ~~Playboy exercised a requisite level of control over its marketing plan.   The~~

6   ~~Commissioners of Business Oversight interpretation of this factors is afforded "great~~

7   ~~weight." *Macedonia Distrib., Inc. v. S-L Distribution Co., LLC,* No. SACV 17-1692~~

8   ~~JVS (KESx), 2018 WL 6190592, at *3 (C.D. Cal. Aug. 7, 2018); See Department of~~

9   ~~Financial Protection & Innovation, *Release 3–F: When does an Agreement Constitute~~

10  ~~a "Franchise"* (June 22, 1994) ("Release").~~

11       As relevant here, the Release provides that the question of substantial

12  association "must be determined … based upon an evaluation of the provisions

13  contained" within the agreement ~~and "the effect which these provisions have as a~~

14  ~~whole~~ on the ability of the person engaged in the business to make decisions

15  substantially without being subject to restrictions or having to obtain the consent or

16  approval of other persons. This determination may be made in the light of applicable

17  principles of general law and of customs prevailing in the particular trade or industry."

18  Release ¶ 1.2.4.  "[T]he requirement of a marketing plan or system prescribed in

19  substantial part by the franchisor is not satisfied merely because an agreement

20  imposes upon the operator of a business procedures or techniques which are

21  customarily observed in business relationships in the particular trade or industry, even

22  though, to some extent, they may restrict the freedom of action or the discretion of

23  the operator." *Id.* ¶ 2.2.6.

24       ~~TNR alleges that~~ Playboy was "in a position of significant control over TNR's

25  use of Playboy's mark" pursuant to the PLA.  FAC ¶ 115.  TNR was required to obtain

26  "prior approval from Playboy" for marketing materials in Playboy's specified format,

27  to" follow the approved marketing plan," to "affix Playboy's official holograms to the

28  Products" and to allow Playboy to audit its books twice a year.  FAC ¶¶ 25–29.  TNR

-4-

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Page: 4

Graphic Element Inserted

Text Inserted
"Accordingly, the Court finds that TNR has not alleged enough facts to support the plausibility of the claim that TNR has ever operated out of California."

Text Inserted
"2. The Requisite Level of Control is Lacking"

Text Inserted
"To plead the existence of a franchise relationship, TNR must allege that Playboy exercised a requisite level of control over its marketing plan. The Commissioners of Business Oversight interpretation of this factors is afforded "great weight." Macedonia Distrib., Inc. v."

Text Inserted
"S-L Distribution Co., LLC, No."

Text Inserted
"SACV 17-1692 JVS (KESx), 2018 WL 6190592, at *3 (C.D. Cal."

Text Inserted
"7, 2018); See Department of Financial Protection & Innovation, Release 3–F: When does an Agreement Constitute a "Franchise" (June 22, 1994) ("Release"). As relevant here, the Release provides that the question of substantial association "must be determined … based upon an evaluation of the provisions contained" within the agreement and "the effect which these provisions have as a whole"

Text Inserted
"Aug."

Text Replaced
[Old]: "conduct business on TNR's behalf in accordance with the terms of the licensing agreement. FAC ¶¶ 33–41. Sometime in the summer of 2019, Playboy allegedly hatched a plan to deprive TNR of any ability to sell non-liquid or non-gel lubricants or cannabis, cannabidiol, and other related products. FAC ¶¶ 44. To accomplish this, Playboy informed Allen that TNR needed to execute the so-called Eighth Amendment to the PLA urgently. FAC ¶ 50. To include TNR's assent to the Eighth Amendment, Playboy informed Allen that PLA did not grant TNR a license over CBD condoms and lubricants, concealed that Playboy needed the Eighth Amendment to develop its own line of CBD condoms and lubricants, and informed Allen that a signature was urgently needed. FAC ¶¶ 46–48. Allen relayed these representations to Amom Dararantanaroj ("Khun Amorn"), the CEO of TNR, who signed the Eighth Amendment without obtaining the advice of counsel. FAC ¶¶ 50-52. The Eighth Amendment expressly excludes CBD products from TNR's license by its plain terms. FAC ¶ 48. Further, Playboy and Allen allegedly entered into a side agreement during this time. Pursuant to this agreement, Allen agreed to surreptitiously represent Playboy's interests, even though he was ostensibly acting as TNR's agent. Playboy induced Allen to market Playboy products to TNR's prospective customers at the expense of TNR's products. Playboy also induced Allen to request"
[New]: "on the ability of the person engaged in the business to make decisions substantially without being subject to restrictions or having to obtain the consent or approval of other persons. This determination may be made in the light of applicable principles of general law and of customs prevailing in the particular trade or industry." Release ¶ 1.2.4. "[T]he requirement of a marketing plan or system prescribed in substantial part by the franchisor is not satisfied merely because an agreement imposes upon the operator of a business procedures or techniques which are customarily observed in business relationships in the particular trade or industry, even though, to some extent, they may restrict the freedom of action or the discretion of the operator." Id. ¶ 2.2.6. TNR alleges that Playboy was "in a position of significant control over TNR's use of Playboy's mark" pursuant to the PLA. FAC ¶ 115. TNR was required to obtain "prior approval from Playboy" for marketing materials in Playboy's specified format, to" follow the approved marketing plan," to "affix Playboy's official holograms to the Products" and to allow Playboy to audit its books twice a year. FAC ¶¶ 25–29. TNR"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Graphic Element Deleted

does not allege that Playboy required TNR to abide by a marketing plan that Playboy created or that Playboy marketed "availab[ility] of a successful market plan" to induce TNR's novation of the PLA. *Cf.* Release ¶ 2.2.3.

While these facts show that Playboy had *some* control over TNR's marketing activities, the Court cannot find that these allegations reasonably suggest the existence of a franchise relationship. According to the Commissioner, courts must consider allegations of control "in light of applicable principles of general law and of customs prevailing in the particular trade or industry." Release ¶ 2.2.4. Playboy argues that these controls are common features of licensing agreements and cites *Hollywood Athletic Club Licensing Corp. v. GHAC–CityWalk*, 938 F. Supp. 612, 615 (C.D. Cal. 1996) for the proposition that a licensor must retain some level of control over their intellectual property to avoid the risk of abandonment. *See* Mot. 10–11. Even indulging even reasonable inference in TNR's favor, the Court finds that these allegations are susceptible of a most natural explanation, *see Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009): Playboy sought to retain sufficient control over its trademark. This factor, while not dispositive, weighs against the finding of a franchise relationship. *See* Release ¶ 2.2.4.

*Boat & Motor Mart v. Sea Ray Boats, Inc.*, 825 F.2d 1285 (9th Cir. 1987) further suggests that the licensing agreement does not give rise to a franchise relationship. There, the Ninth Circuit found that plaintiffs had demonstrated a dispute of material fact sufficient for the franchise claims to proceed to trial. The franchisor provided the franchisee with "a model marketing program … press, kits, promotional tools, and marketing advice." *Id.* at 1287. It gave the plaintiff "detailed instructions" on what its salesman would do at boat shows, including specific instructions on how to set up the booth, how to clean the boats, when to clean the boats, and how the salesmen should dress. *Id.* Further, the franchisor required the plaintiff to purchase at its own expense films, video cassettes, banners, posters, floats, hats, visors and T-shirts that franchisor had designed. *Id.* None of these factors are present here. *See*

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Page: 5

**Text Replaced**

[Old]: "reimbursement from TNR based on expenditures that were not authorized by the licensing agreement. Meanwhile, Playboy allegedly pursued a scheme to terminate the licensing agreement. For instance, Playboy exercised its rights under the PLA to order an audit of TNR's books. FAC ¶¶ 98–99. The audit purported to reveal that TNR failed to make necessary royalty payments totaling $8,622,713 and failed to obtain prior approval for certain products. FAC ¶ 100. TNR contested these findings and offered to cure any breaches of the licensing agreement to the extent they existed. FAC ¶¶ 102, 106. TNR alleges that Playboy declined this offer and instead seized on the audit as a pretextual basis to terminate the licensing agreement. FAC ¶ 106. Moreover, while the licensing agreement was in effect, TNR claims Playboy took steps to disrupt its relationship with retail suppliers, including Walmart and Walgreens. Playboy accomplished this through various means, including withholding approval over TNR's proposed products in a manner that TNR contains is unreasonable. Playboy, by and through Allen, also prevented TNR from entering into commercial relations with prospective retailers, including CVS, Core-Mark, and a Russian distributor. Based on this conduct, TNR brings claims against Playboy for breach of contract and the implied covenant of fair dealing, unfair commercial practices, intentional interference with contractual relations, intentional and negligent interference with prospective economic"

[New]: "does not allege that Playboy required TNR to abide by a marketing plan that Playboy created or that Playboy marketed "availab[ility] of a successful market plan" to induce TNR's novation of the PLA. Cf. Release ¶ 2.2.3. While these facts show that Playboy had some control over TNR's marketing activities, the Court cannot find that these allegations reasonably suggest the existence of a franchise relationship. According to the Commissioner, courts must consider allegations of control "in light of applicable principles of general law and of customs prevailing in the particular trade or industry." Release ¶ 2.2.4. Playboy argues that these controls are common features of licensing agreements and cites Hollywood Athletic Club Licensing Corp. v. GHAC–CityWalk, 938 F. Supp. 612, 615 (C.D. Cal. 1996) for the proposition that a licensor must retain some level of control over their intellectual property to avoid the risk of abandonment. See Mot. 10–11. Even indulging even reasonable inference in TNR's favor, the Court finds that these allegations are susceptible of a most natural explanation, see Ashcroft v. Iqbal, 556 U.S. 662, 682 (2009): Playboy sought to retain sufficient control over its trademark. This factor, while not dispositive, weighs against the finding of a franchise relationship. See Release ¶ 2.2.4. Boat & Motor Mart v. Sea Ray Boats, Inc., 825 F.2d 1285 (9th Cir. 1987) further suggests that the licensing agreement does not give rise to a franchise relationship. There, the Ninth Circuit found that plaintiffs had demonstrated a dispute of material fact sufficient for the franchise claims to proceed to trial. The franchisor provided the franchisee with "a model marketing program … press, kits, promotional tools, and marketing advice." Id. at 1287. It gave the plaintiff "detailed instructions" on what its salesman would do at boat shows, including specific instructions on how to set up the booth, how to clean the boats, when to clean the boats, and how the salesmen should dress. Id. Further, the franchisor required the plaintiff to purchase at its own expense films, video cassettes, banners, posters, floats, hats, visors and T-shirts that franchisor had designed. Id. None of these factors are present here. See"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

| | |
|---|---|
| 1 | *generally* FAC. There is no suggestion that Playboy imposed a marketing plan on |
| 2 | TNR, required it to purchase Playboy designed advertisements, or sought to micro- |
| 3 | manage how TNR marketed its products. While it is undisputed that TNR was |
| 4 | required to obtain Playboy's approval for marketing materials and new product |
| 5 | offerings, these rights, without more, are best understood as a Playboy's attempt, as |
| 6 | licensor, to retain sufficient control over its mark, which TNR agrees constitutes |
| 7 | valuable property. *See* FAC Ex. 1, ¶¶ 2(b)(i),(h). |
| 8 | Accordingly, as TNR has failed adequately plead the existence of franchise |
| 9 | relationship, the Court dismisses the first and second causes of action. |
| 10 | **B. TNR's Interference Claims Fail** |
| 11 | To state a claim for interference, a plaintiff must adequately plead that |
| 12 | the defendant "not only interfered with the plaintiff's expectancy, but engaged in |
| 13 | conduct that was wrongful by some legal measure other than the fact of interference |
| 14 | itself." *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376, 393 (1995). |
| 15 | For an act to be sufficiently independently wrongful, it must be "unlawful, that is, … |
| 16 | it is proscribed by some constitutional, statutory, regulatory, common law, or other |
| 17 | determinable legal standard." *Korea Supply Co.*, 29 Cal.4th at 1159; *Drink Tank* |
| 18 | *Ventures LLC v. Al Bottles*, 71 Cal. App. 5th 528, 539 (2021) (The requirement of |
| 19 | independently wrongful conduct "sensibly redresses the balance between providing a |
| 20 | remedy for predatory that is, wrongful economic behavior" (on the one hand) and |
| 21 | keeping legitimate business competition outside litigative bounds (on the other))." |
| 22 | "[T]he essential nature of the conduct determines whether the action sounds in |
| 23 | contract or in tort." *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. |
| 24 | 4th 168, 182 (2004). |
| 25 | After careful consideration of the pleadings in the light most favorable to TNR, |
| 26 | the Court finds that the gravamen of this action sounds in contract. In the complaint, |
| 27 | TNR alleges that Playboy engaged in conduct that violated the PLA. The PLA and |
| 28 | Playboy's alleged breach thereof are the leitmotif of the complaint. *See* FAC ¶¶ 1–2, |

---

**Page: 6**

**Graphic Element Inserted**

**Text Replaced**
[Old]: "relations, and conversion. FAC ¶¶ 146–213. TNR also claims that the licensing agreement gives rise to a franchise relationship between TNR and Playboy and claims that Playboy has violated the California Franchise Investment Law by failing to register the franchise and the California Franchise Relations Act by improperly terminating the licensing agreement. FAC ¶¶ 126 – 145. 2 3 4 5 6 7 8 II. LEGAL STANDARD 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 A motion to dismiss brought under to"
[New]: "generally FAC. There is no suggestion that Playboy imposed a marketing plan on TNR, required it to purchase Playboy designed advertisements, or sought to micromanage how TNR marketed its products. While it is undisputed that TNR was required to obtain Playboy's approval for marketing materials and new product offerings, these rights, without more, are best understood as a Playboy's attempt, as licensor, to retain sufficient control over its mark, which TNR agrees constitutes valuable property. See FAC Ex. 1, ¶¶ 2(b)(i),(h). Accordingly, as TNR has failed adequately plead the existence of franchise relationship, the Court dismisses the first and second causes of action. 10 B. TNR's Interference Claims Fail 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 To state a claim for interference, a plaintiff must adequately plead that"

Font "CourierNewPSMT" changed to "TimesNewRomanPS-ItalicMT".

**Text Inserted**
"3 4 5 6 7 8 9"

**Text Deleted**
"Federal Rule of"

**Annotation Deleted**

**Annotation Deleted**

**Text Replaced**
[Old]: "Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." Winebarger v. Pa. Higher Educ. Assistance Agency, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019) (Walter, J.). "A"
[New]: "the defendant "not only interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal. 4th 376, 393 (1995). For an act to be sufficiently independently wrongful, it must be "unlawful, that is, … it"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

**Annotation Deleted**

**Text Replaced**
[Old]: "Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory'""
[New]: "is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Korea Supply Co, 29 Cal.4th at 1159; Drink Tank Ventures LLC"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

**Annotation Deleted**

**Annotation Deleted**

**Text Deleted**
"(9th Cir."

**Text Deleted**
"Summit"

Comments from page 6 continued on next page

1 | *generally* FAC.  There is no suggestion that Playboy imposed a marketing plan on
2 | TNR, required it to purchase Playboy designed advertisements, or sought to micro-
3 | manage how TNR marketed its products.  While it is undisputed that TNR was
4 | required to obtain Playboy's approval for marketing materials and new product
5 | offerings, these rights, without more, are best understood as a Playboy's attempt, as
6 | licensor, to retain sufficient control over its mark, which TNR agrees constitutes
7 | valuable property.  *See* FAC Ex. 1, ¶¶ 2(b)(i),(h).

8 |     Accordingly, as TNR has failed adequately plead the existence of franchise
9 | relationship, the Court dismisses the first and second causes of action.

10 | **B. TNR's Interference Claims Fail**

11 |     To state a claim for interference, a plaintiff must adequately plead that
12 | the defendant "not only interfered with the plaintiff's expectancy, but engaged in
13 | conduct that was wrongful by some legal measure other than the fact of interference
14 | itself."  *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376, 393 (1995).
15 | For an act to be sufficiently independently wrongful, it must be "unlawful, that is, …
16 | it is proscribed by some constitutional, statutory, regulatory, common law, or other
17 | determinable legal standard."  *Korea Supply Co.*, 29 Cal.4th at 1159; *Drink Tank*
18 | *Ventures LLC v. Al Bottles*, 71 Cal. App. 5th 528, 539 (2021) (The requirement of
19 | independently wrongful conduct "sensibly redresses the balance between providing a
20 | remedy for predatory that is, wrongful economic behavior" (on the one hand) and
21 | keeping legitimate business competition outside litigative bounds (on the other))."
22 | "[T]he essential nature of the conduct determines whether the action sounds in
23 | contract or in tort."  *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App.
24 | 4th 168, 182 (2004).

25 |     After careful consideration of the pleadings in the light most favorable to TNR,
26 | the Court finds that the gravamen of this action sounds in contract.  In the complaint,
27 | TNR alleges that Playboy engaged in conduct that violated the PLA.  The PLA and
28 | Playboy's alleged breach thereof are the leitmotif of the complaint.  *See* FAC ¶¶ 1–2,

---

**Annotation Deleted**

**Text Deleted**
"(quoting"

**Text Replaced**
[Old]: "Inc., 922 F. Supp. 299, 304 (C.D. Cal. 1996)"
[New]: "Cal. App. 5th 528, 539 (2021) (The requirement"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT,"

**Text Replaced**
[Old]: "Technology, Inc v. High-Line Medical Instruments Co,"
[New]: "v. Al Bottles, 71"

Font "CourierNewPS-ItalicMT" changed to "TimesNewRomanPS-ItalicMT".

**Text Replaced**
[Old]: "1988). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Winebarger, 411 F. Supp. at 1082 (quoting"
[New]: "of independently wrongful conduct "sensibly redresses the balance between providing a remedy"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT,"

**Annotation Deleted**

**Annotation Deleted**

**Text Deleted**
"Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699"

**Graphic Element Deleted**

**Text Deleted**
"Bell Atlantic 25 26 27 28"

**Annotation Deleted**

**Text Replaced**
[Old]: "2 TNR also brings a claim for breach of fiduciary duty against Allen. FAC ¶¶ 214–221. This claim is not at issue."
[New]: "for predatory that is, wrongful economic behavior" (on one hand) and keeping legitimate business competition outside litigative bounds (on the other))." "[T]he essential nature of"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT,"
Font-size "9" changed to "14.04".

**Graphic Element Deleted**

**Text Deleted**
"1 2"

**Text Deleted**
"-6-"

**Annotation Deleted**

**Text Deleted**

Comments from page 6 continued on next page

*generally* FAC. There is no suggestion that Playboy imposed a marketing plan on TNR, required it to purchase Playboy designed advertisements, or sought to micro-manage how TNR marketed its products. While it is undisputed that TNR was required to obtain Playboy's approval for marketing materials and new product offerings, these rights, without more, are best understood as a Playboy's attempt, as licensor, to retain sufficient control over its mark, which TNR agrees constitutes valuable property. *See* FAC Ex. 1, ¶¶ 2(b)(i),(h).

Accordingly, as TNR has failed adequately plead the existence of franchise relationship, the Court dismisses the first and second causes of action.

### B. TNR's Interference Claims Fail

To state a claim for interference, a plaintiff must adequately plead that the defendant "not only interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376, 393 (1995). For an act to be sufficiently independently wrongful, it must be "unlawful, that is, ... it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal.4th at 1159; *Drink Tank Ventures LLC v. Al Bottles*, 71 Cal. App. 5th 528, 539 (2021) (The requirement of independently wrongful conduct "sensibly redresses the balance between providing a remedy for predatory that is, wrongful economic behavior" (on the one hand) and keeping legitimate business competition outside litigative bounds (on the other)." "[T]he essential nature of the conduct determines whether the action sounds in contract or in tort." *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 182 (2004).

After careful consideration of the pleadings in the light most favorable to TNR, the Court finds that the gravamen of this action sounds in contract. In the complaint, TNR alleges that Playboy engaged in conduct that violated the PLA. The PLA and Playboy's alleged breach thereof are the leitmotif of the complaint. *See* FAC ¶¶ 1–2,

---

"Corp."

**Graphic Element Deleted**

**Text Replaced**
[Old]: "v. Twombly, 550 U.S. 544, 555(2007)). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. In deciding a motion to dismiss, a court must accept as true the allegations"
[New]: "the conduct determines whether the action sounds in contract or in tort." JRS Prods., Inc. v. Matsushita Elec."

Font "CourierNewPS-ItalicMT" changed to "TimesNewRomanPSMT".

**Text Replaced**
[Old]: "of the complaint and must construe those allegations in the light most favorable to the nonmoving party. See, e.g.,"
[New]: "of Am., 115 Cal. App. 4th 168, 182 (2004). After careful consideration of the pleadings in the light most favorable to TNR, the Court finds that the gravamen"

Font "CourierNewPSMT" changed to "TimesNewRomanPS-ItalicMT".

**Text Inserted**
"Corp."

**Text Deleted**
"Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th"

**Annotation Deleted**

**Annotation Deleted**

**Text Replaced**
[Old]: "Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations.""
[New]: "of this action sounds in contract. In the complaint, TNR alleges that Playboy engaged"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

**Text Replaced**
[Old]: "Evidence 201 without converting the motion to dismiss into a motion for summary judgment. See, e.g., id.;"
[New]: "the complaint. See FAC ¶¶ 1–2, 26 27 28 -6-"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

**Text Deleted**
"Wyler Summit Partnership v."

**Annotation Deleted**

**Text Deleted**
"Hal Roach Studios, Inc. v. Richard Feiner & Co.,"

**Annotation Deleted**

**Annotation Deleted**

**Text Deleted**
"Rule 12(b)(6) motion.""

**Annotation Deleted**

Comments from page 6 continued on next page

*generally* FAC. There is no suggestion that Playboy imposed a marketing plan on TNR, required it to purchase Playboy designed advertisements, or sought to micro-manage how TNR marketed its products. While it is undisputed that TNR was required to obtain Playboy's approval for marketing materials and new product offerings, these rights, without more, are best understood as a Playboy's attempt, as licensor, to retain sufficient control over its mark, which TNR agrees constitutes valuable property. *See* FAC Ex. 1, ¶¶ 2(b)(i),(h).

Accordingly, as TNR has failed adequately plead the existence of franchise relationship, the Court dismisses the first and second causes of action.

**B. TNR's Interference Claims Fail**

To state a claim for interference, a plaintiff must adequately plead that the defendant "not only interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376, 393 (1995). For an act to be sufficiently independently wrongful, it must be 'unlawful, that is, … it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal.4th at 1159; *Drink Tank Ventures LLC v. Al Bottles*, 71 Cal. App. 5th 528, 539 (2021) (The requirement of independently wrongful conduct "sensibly redresses the balance between providing a remedy for predatory that is, wrongful economic behavior" (on the one hand) and keeping legitimate business competition outside litigative bounds (on the other))." "[T]he essential nature of the conduct determines whether the action sounds in contract or in tort." *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 182 (2004).

After careful consideration of the pleadings in the light most favorable to TNR, the Court finds that the gravamen of this action sounds in contract. In the complaint, TNR alleges that Playboy engaged in conduct that violated the PLA. The PLA and Playboy's alleged breach thereof are the leitmotif of the complaint. *See* FAC ¶¶ 1–2,

Text Deleted
"Summit Technology, 922 F. Supp. at"

Annotation Deleted

Text Replaced
[Old]: "896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant"
[New]: "the PLA. The PLA and Playboy's alleged breach thereof are the leitmotif"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Text Replaced
[Old]: "304 (internal citation omitted). "Generally, a district court may not consider any material beyond the pleadings in ruling on a"
[New]: "in conduct that violated"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Annotation Deleted

Text Deleted
"to Federal Rule"

Annotation Deleted

Text Attributes Changed
Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Annotation Deleted

Text Deleted
"Branch"

Annotation Deleted

10–17, 19–28, 34–38, 44, 82–91, 92–106, 107–112, 146–156. Looking at the conduct giving rise to TNR's claims as required by *JRS Products*, the Court finds that the allegations in the complaint do not plausibly suggest that Playboy engaged in "independently wrongful conduct" that can be disentangled from TNR's contractual claims. To the extent Playboy has harmed TNR, TNR's remedies arise from contract law.

By way of illustration, TNR complains that Playboy improperly competed with TNR's products. *See, e.g.*, FAC ¶ 59. Such conduct, if true, could potentially violate the exclusive license TNR was granted under the PLA. Similarly, TNR alleges that it was harmed because Playboy improperly withheld approval over marketing materials and products. *See, e.g.*, FAC ¶¶ 84–86, 115, 117, 183. These allegations, if true, could potentially constitute a violation of Playboy's implied duties under the PLA. *See Kendall v. Ernest Pestana*, 40 Cal. 3d 488, 501 (1985). Indeed, TNR expressly asserts this conduct in support of its claim for a breach of the implied covenant of good faith and fair dealing. *See* FAC ¶ 155(d).

Further, TNR complains that Playboy improperly requested reimbursements for expenses that were not authorized. *See, e.g.*, FAC ¶¶ 69, 155, 160, 173, 205. A fair reading of the complaint suggests that these payments were made by TNR to Allen pursuant to the terms of the licensing agreement. FAC ¶ 211 (Playboy knew or had reason to know that the payments *Freedom sent to Playboy* actually belonged to TNR) (emphasis added). Given that TNR's allegations suggest potential violations of the licensing agreement that governs the relationship between Allen, TNR, and Playboy, the Court is unable to find that TNR has pleaded the existence of an independently wrongful act sufficiently. *See, e.g.*, *JRS Products*, 115 Cal. App. 4th at 182; *Korea Supply*, 29 Cal. 4th at 1150; *State Ready Mix, Inc. v. Moffatt & Nichol*, 232 Cal. App. 4th 1227, 1232 (2015) ("[Plaintiff] cannot recast [its] complaint for breach of contract/breach of warranty as a tort action. 'A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.'")

---

**Page: 7**

Graphic Element Inserted

Graphic Element Deleted

Text Deleted
"1 2"

Text Replaced
[Old]: "must decide whether to grant leave to amend. Generally, 26 the Ninth Circuit has a liberal policy favoring amendments 27 and, thus, leave to amend should be freely granted. See, 28"
[New]: "10–17, 19–28, 34–38, 44, 82–91, 92–106, 107–112, 146–156. Looking at the conduct giving rise to TNR's claims as required by JRS Products, the"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Text Inserted
"1 2"

Graphic Element Deleted

Annotation Deleted

Text Replaced
[Old]: "658 (9th Cir. 1992). However, a Court does not need to 1 grant leave to amend in cases where the Court determines 2 3 that permitting a plaintiff to amend would be an exercise 4 in futility. See, e.g., Winebarger, 411 F. Supp. at 1094; 5 MGA Ent., Inc. v. Louis Vuitton Malletier, S.A., No. 6 22:18-cv-10758-JFW(RAOx), 2019 WL 2109643, at *5 (C.D. 7 Cal. May 14, 2019) (Walter, J.). III. DISCUSSION 8 9 10 11 12 13 14 15 16 Playboy does not seek dismissal of TNR's claims for breach of contract and breach of the implied covenant of good faith. See generally Mot. Playboy seeks to dismiss TNR's claims for violations of the franchise laws, tortious interference with actual and prospective economic relations, fraudulent inducement, conversion, and unfair competitive practices. Mot. 1–2. The Court addresses these claims seriatim. A. TNR HAS FAILED TO ADEQUATELY PLEAD THE EXISTENCE OF A FRANCHISE UNDER CALIFORNIA LAW 17 18 19 20 21 TNR asserts claims against Playboy under California Corporation Code §§ 20000 et seq. ("CRFA") and California Corporations Code §§ 31000 et seq. (CFIL). FAC ¶¶ 139– 22 23 24 25 145. The CRFA and CFIL define a "franchise" as: [A] contract of agreement, either expressed or implied, whether oral or written, between two or more persons by which: (1) A franchisee is granted the right to engage"
[New]: "Court finds that the allegations in the complaint do not plausibly suggest that Playboy engaged in "independently wrongful conduct" that can be disentangled from TNR's contractual claims. To the extent Playboy has harmed TNR, TNR's remedies arise from contract law. By way of illustration, TNR complains that Playboy improperly competed with TNR's products. See, e.g., FAC ¶ 59. Such conduct, if true, could potentially violate the exclusive license TNR was granted under the PLA. Similarly, TNR alleges that it was harmed because Playboy improperly withheld approval over marketing materials and products. See, e.g., FAC ¶¶ 84–86, 115, 117, 183. These allegations, if true, could potentially constitute a violation of Playboy's implied duties under the PLA. See"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Text Deleted
"12(b)(6) P. CIV. R. [PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED."

Graphic Element Deleted

Text Deleted
"e.g., DeSoto v. Yellow Freight System, Inc., 957 F.2d 655,"

Annotation Deleted

Text Deleted
"-7-"

Graphic Element Deleted

Comments from page 7 continued on next page

10–17, 19–28, 34–38, 44, 82–91, 92–106, 107–112, 146–156.  Looking at the conduct giving rise to TNR's claims as required by *JRS Products*, the Court finds that the allegations in the complaint do not plausibly suggest that Playboy engaged in "independently wrongful conduct" that can be disentangled from TNR's contractual claims.  To the extent Playboy has harmed TNR, TNR's remedies arise from contract law.

By way of illustration, TNR complains that Playboy improperly competed with TNR's products.  *See, e.g.*, FAC ¶ 59.  Such conduct, if true, could potentially violate the exclusive license TNR was granted under the PLA.  Similarly, TNR alleges that it was harmed because Playboy improperly withheld approval over marketing materials and products.  *See, e.g.*, FAC ¶¶ 84–86, 115, 117, 183.  These allegations, if true, could potentially constitute a violation of Playboy's implied duties under the PLA.  *See Kendall v. Ernest Pestana*, 40 Cal. 3d 488, 501 (1985).  Indeed, TNR expressly asserts this conduct in support of its claim for a breach of the implied covenant of good faith and fair dealing.  *See* FAC ¶ 155(d).

Further, TNR complains that Playboy improperly requested reimbursements for expenses that were not authorized.  *See, e.g.*, FAC ¶¶ 69, 155, 160, 173, 205.  A fair reading of the complaint suggests that these payments were made by TNR to Allen pursuant to the terms of the licensing agreement.  FAC ¶ 211(Playboy knew or had reason to know that the payments *Freedom sent to Playboy* actually belonged to TNR) (emphasis added).  Given that TNR's allegations suggest potential violations of the licensing agreement that governs the relationship between Allen, TNR, and Playboy, the Court is unable to find that TNR has pleaded the existence of an independently wrongful act sufficiently.  *See, e.g.*, *JRS Products*, 115 Cal. App. 4th at 182; *Korea Supply*, 29 Cal. 4th at 1150; *State Ready Mix, Inc. v. Moffatt & Nichol*, 232 Cal. App. 4th 1227, 1232 (2015) ("[Plaintiff] cannot recast [its] complaint for breach of contract/breach of warranty as a tort action. 'A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.'")

-7-

Page: 8

1  (quoting *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), *superseded by statute on*
2  *other grounds*)).

3  Accordingly, the Court concludes that TNR has failed to state claims for
4  intentional interference with prospective economic advantage and negligent
5  interference with economic advantage and, thus, TNR's sixth, seventh, and eighth
6  causes of action are dismissed.

7  **C. TNR's Fraudulent Inducement Claim Fails**

8  "A claim for fraud in the inducement requires the following elements: '(a) a
9  misrepresentation (false representation, concealment, or nondisclosure); (b) scienter
10 or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and
11 (e) resulting damage.'" *McColgan v. Mutual of Omaha Ins. Co.*, 4 F. Supp. 3d 1228
12 1233 (E.D. Cal. 2014) (quoting *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th
13 289, 294 (2005)). "Justifiable reliance in a fraud action is ordinarily a question of
14 fact, '[e]xcept in the rare case where the undisputed facts leave no room for a
15 reasonable difference of opinion.'" *Id.* (quoting *Blankenheim v. E.F. Hutton & Co.*,
16 217 Cal.App.3d 1463, 1475 (1990)).

17 TNR's complaint fails to show that it justifiably relied on Playboy's
18 representations as an inducement to signing the Eighth Amendment. TNR alleges
19 that the PLA "clearly grant[ed] TNR a license to … CBD condoms and lubricants."
20 FAC ¶ 49. TNR alleges that its CEO, Khun Amorn, signed the Eighth Amendment,
21 pursuant to which it lost its license to CBD condoms and lubricants. TNR reasons
22 that Playboy prevented Khun Amorn from seeking or obtaining legal counsel prior to
23 signing [Eighth Amendment]" by falsely claiming that the amendment was urgently
24 needed. But TNR's account does not show that Khun Amorn justifiably relied on
25 Playboy's representations. There is no suggestion that Playboy prevented or
26 discouraged Khun Amorn from seeking counsel or that Playboy indicated that the
27 "urgency" of the situation would not allow time to do so. *See* FAC ¶ 51–54.
28

-8-

Comments from page 8 continued on next page

1   (quoting *Aas v. SuperiorCourt*, 24 Cal. 4th 627, 643 (2000), *superseded by statute on*

2   *other grounds*)).

3      Accordingly, the Court concludes that TNR has failed to state claims for

4   intentional interference with prospective economic advantage and negligent

5   interference with economic advantage and, thus, TNR's sixth, seventh, and eighth

6   causes of action are dismissed.

7      **C.  TNR's Fraudulent Inducement Claim Fails**

8      "A claim for fraud in the inducement requires the following elements: '(a) a

9   misrepresentation (false representation, concealment, or nondisclosure); (b) scienter

10   or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and

11   (e) resulting damage.'" *McColgan v. Mutual of Omaha Ins. Co.*, 4 F. Supp. 3d 1228

12   1233 (E.D. Cal. 2014) (*quoting Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th

13   289, 294 (2005)).  "Justifiable reliance in a fraud action is ordinarily a question of

14   fact, '[e]xcept in the rare case where the undisputed facts leave no room for a

15   reasonable difference of opinion.'"  *Id.* (quoting *Blankenheim v. E.F. Hutton & Co.*,

16   217 Cal.App.3d 1463, 1475 (1990)).

17      TNR's complaint fails to show that it justifiably relied on Playboy's

18   representations as an inducement to signing the Eighth Amendment.  TNR alleges

19   that the PLA "clearly grant[ed] TNR a license to … CBD condoms and lubricants."

20   FAC ¶ 49.  TNR alleges that its CEO, Khun Amorn, signed the Eighth Amendment,

21   pursuant to which it lost its license to CBD condoms and lubricants.  TNR reasons

22   that Playboy prevented Khun Amorn from seeking or obtaining legal counsel prior to

23   signing [Eighth Amendment]" by falsely claiming that the amendment was urgently

24   needed.  But TNR's account does not show that Khun Amorn justifiably relied on

25   Playboy's representations.  There is no suggestion that Playboy prevented or

26   discouraged Khun Amorn from seeking counsel or that Playboy indicated that the

27   "urgency" of the situation would not allow time to do so.  *See* FAC ¶ 51–54.

28

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Similarly, TNR does not suggest that Playboy concealed the clear, unambiguous terms of the Eighth Amendment.

Under California law, it is well settled that a court may consider an individual's "knowledge, experience and competence" in assessing whether reliance is justifiable. *In re Kirsh*, 973 F.2d 1454, 1461 (9th Cir. 1992). Here, TNR alleges it is an international manufacturing company that has been publicly traded on the Thailand stock exchange since 2016 that invested "tens of millions" of dollars into its relationship with Playboy. FAC ¶¶ 10, 1. Khun Amorn serves as TNR's Chief Operating Officer,  FAC ¶ 44, and thus his conduct must be assessed against this backdrop.

*First*, the Court is not persuaded that Playboy prevented Khun Amorn from obtaining the advice of counsel by claiming that the Eighth Amendment should be executed urgently.  Simply stated, it is not plausible that the CEO of an internationally traded company would modify an agreement worth tens of millions of dollars without obtaining the advice of counsel simply because the counter-party claims that it was urgent.  Holding Khun Amorn to this standard is consistent with California's applicable jurisprudence.  For instance, in *In re Kirsh*, the Ninth Circuit applied California law and found that it was unreasonable for an attorney to avoid obtaining a title report in a transaction for real property based on the counter-parties representation that a title report was not necessary. *In re Kirsh*, 973 F.2d 1454, 1461 (9th Cir. 1992).  Similarly, the Court is not persuaded that a publicly traded company's Chief Operating Officer would modify a licensing agreement of strategic importance based on Allen's word alone. *Id.; see also Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 415 (1996).

Accordingly, the Court dismisses this claim.

**D. TNR's Conversion Claim Fails**

Conversion is the wrongful exercise of dominion over the property of another. *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014). A convertible property

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Page: 9

Text Replaced
[Old]: "the Court cannot credit this conclusory allegation. And a charitable reading of Complaint do not suggest that TNR has operated in California. For instance, TNR's alleges that it "[e]ngaged in sales, leases, and business transactions directed toward customers from with the state of California. FAC ¶ 120 (emphasis added). TNR has not cited and the Court has not found authority supporting the idea that targeting California customers constitutes operating within California. TNR also admits it lacked a sales representatives or distribution network in the United States" as of 2018. FAC ¶ 33. At no point does the complaint suggest that TNR developed a U.S. presence—let alone operations in California—after 2018. See generally FAC. Quite the contrary, TNR alleges it "engaged" Defendant Nicholai Allen to manage its U.S.-based business. FAC ¶¶ 33, 120. This reasonably suggests that TNR lacked a California presence."
[New]: "Similarly, TNR does not suggest that Playboy concealed the clear, unambiguous terms of the Eighth Amendment. Under California law, it is well settled that a court may consider an individual's "knowledge, experience and competence" in assessing whether reliance is justifiable. In re Kirsh, 973 F.2d 1454, 1461 (9th Cir. 1992). Here, TNR alleges it is an international manufacturing company that has been publicly traded on the Thailand stock exchange since 2016 that invested 'tens of millions' of dollars into its relationship with Playboy. FAC ¶¶ 10, 1. Khun Amorn serves as TNR's Chief Operating Officer, FAC ¶ 44, and thus his conduct must be assessed against this backdrop. First, the Court is not persuaded that Playboy prevented Khun Amorn from obtaining the advice of counsel by claiming that the Eighth Amendment should be executed urgently. Simply stated, it is not plausible that the CEO of an internationally traded company would modify an agreement worth tens of millions of dollars without obtaining the advice of counsel simply because the counter-party claims that it was urgent. Holding Khun Amorn to this standard is consistent with California's applicable jurisprudence. For instance, in In re Kirch, the Ninth Circuit applied California law and found that it was unreasonable for an attorney to avoid obtaining a title report in a transaction for real property based on the counter-parties representation that a title report was not necessary."

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Annotation Inserted

Text Inserted
"In re Kirsh, 973 F.2d 1454, 1461"

Annotation Inserted

Text Replaced
[Old]: "Similarly, TNR does not allege that it negotiated (or performed under) its agreements with Walmart, Caremark, or any"
[New]: "(9th Cir. 1992). Similarly, the Court is not persuaded that a publicly traded company's"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Annotation Inserted

Text Replaced
[Old]: "of the other third-parties were in California."
[New]: "Chief Operating Officer would modify a licensing agreement of strategic importance"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Annotation Inserted

Text Replaced
[Old]: "Accordingly, the Court finds that TNR has not alleged enough facts to support the plausibility of the claim that TNR has ever operated out of California. 25 26 27 28"
[New]: "based on Allen's word alone. Id.; see also Rosenthal v. Great Western Fin. Securities Corp., 14 Cal. 4th 394, 415 (1996). 25 Accordingly, the Court dismisses this claim. D. TNR's Conversion Claim Fails 26 27 28 Conversion is the wrongful exercise of dominion over the property of another. Welco Elecs., Inc. v. Mora, 223 Cal. App. 4th 202, 208 (2014). A convertible property -9-"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Comments from page 9 continued on next page

1   Similarly, TNR does not suggest that Playboy concealed the clear, unambiguous
2   terms of the Eighth Amendment.

3       Under California law, it is well settled that a court may consider an individual's
4   "knowledge, experience and competence" in assessing whether reliance is justifiable.
5   *In re Kirsh*, 973 F.2d 1454, 1461 (9th Cir. 1992). Here, TNR alleges it is an
6   international manufacturing company that has been publicly traded on the Thailand
7   stock exchange since 2016 that invested "tens of millions" of dollars into its
8   relationship with Playboy. FAC ¶¶ 10, 1. Khun Amorn serves as TNR's Chief
9   Operating Officer, FAC ¶ 44, and thus his conduct must be assessed against this
10  backdrop.

11      *First*, the Court is not persuaded that Playboy prevented Khun Amorn from
12  obtaining the advice of counsel by claiming that the Eighth Amendment should be
13  executed urgently. Simply stated, it is not plausible that the CEO of an internationally
14  traded company would modify an agreement worth tens of millions of dollars without
15  obtaining the advice of counsel simply because the counter-party claims that it was
16  urgent. Holding Khun Amorn to this standard is consistent with California's
17  applicable jurisprudence. For instance, in *In re Kirch*, the Ninth Circuit applied
18  California law and found that it was unreasonable for an attorney to avoid obtaining
19  a title report in a transaction for real property based on the counter-parties
20  representation that a title report was necessary. *In re Kirch*, 973 F.2d 1454, 1461
21  (9th Cir. 1992). Similarly, the Court is not persuaded that a publicly traded company's
22  Chief Operating Officer would modify a licensing agreement of strategic importance
23  based on Allen's word alone. *Id.*; *see also Rosenthal v. Great Western Fin. Securities*
24  *Corp.*, 14 Cal. 4th 394, 415 (1996).

25      Accordingly, the Court dismisses this claim.
26      **D. TNR's Conversion Claim Fails**
27      Conversion is the wrongful exercise of dominion over the property of another.
28  *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014). A *convertible* property

Text Deleted
"-11-"

interest requires three elements: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKx)2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019) (quoting *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003)). "Money may be the subject of conversion if the claim involves a specific, identifiable sum; it is not necessary that each coin or bill be earmarked." *Welco*, 223 Cal. App. 4th at 209.

Here, TNR claims that between November 2019 and August 31, 2021, TNR converted monies "exceeding $497.860.75" that full "total of which can be ascertained and confirm by third-party invoices." FAC ¶¶ 207. This allegation cannot form the basis of a conversion action because TNR has failed to allege the conversion of a specific sum of money. According to *Welco*, which TNR's cites with approval, "[a] plaintiff must specifically identify the amount of money converted. 223 Cal. App. 4th at 217. In this case, stating that the amount "exceed[s] $497.860.75" does not properly plead a specific dollar amount. FAC ¶ 207. Federal courts have previously dismissed conversion claims where the plaintiff fails to plead a definite sum. *E.g.*, *Mami Nutraceuticals, LLC v. Nat'l Merch. Ctr., Inc.*, No. SACV1601308JVSJCGX, 2017 WL 3081823, at *6 (C.D. Cal. June 9, 2017) ("In this case, stating the amount withheld as over $500,000 does not properly plead a specific dollar amount …") (citing *Baxter v. King*, 23 P. 172, 172 (Cal. Dist. Ct. App. 1927)); *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-CV-00155-BAS DHB, 2015 WL 1013704, at *9–10 (S.D. Cal. Mar. 9, 2015) (dismissing conversion claim based on overcharges "in excess of $160,000" because the "dispute is more akin to a dispute over a bill than it is to outright theft" and "a failure to pay money owed or claims arising out of an alleged simple overcharge cannot be the basis for a conversion claim".). On this basis, the Court finds that dismissal of TNR's conversion claim is warranted.

Page: 10

Graphic Element Inserted

Graphic Element Deleted

Text Deleted
"2. TNR's Allegations Fail To Suggest That 1 Playboy Had Requisite Control Over TNR's"

Text Replaced
[Old]: "9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 Separately, the Court finds that TNR has failed to adequately plead the existence of a franchise relationship. To plead the existence of a franchise relationship, TNR must allege that Playboy exercised a requisite level of control over its marketing plan. The parties dispute what level of control is necessary on a motion to dismiss. The Commissioner's interpretation is instructive. As relevant here, the Release provides that the question of substantial association "must be determined … based upon an evaluation of the provisions contained" within the agreement and "the effect which these provisions have as a whole on the ability of the person engaged in the business to make decisions substantially without being subject to restrictions or having to obtain the consent or approval of other persons. This determination may be made in the light of applicable principles of general law and of customs prevailing in the particular trade or industry." Release ¶ 1.2.4. "[T]he requirement of a marketing plan or system prescribed in substantial part by the franchisor is not satisfied merely because an agreement imposes upon the operator of a business procedures or techniques which are customarily observed in business relationships in the particular trade or industry, even though, to some extent, they may 26 27 28 -12-"
[New]: "interest requires three elements: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." Monster Energy Co. v. Vital Pharms., Inc., No. EDCV 18-1882 JGB (SHKx)2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019) (quoting Kremen v. Cohen, 337 F.3d 1024, 1030 (9th Cir. 2003)). "Money may be the subject of conversion if the claim involves a specific, identifiable sum; it is not necessary that each coin or bill be earmarked." Welco, 223 Cal. App. 4th at 209."

Graphic Element Deleted

Graphic Element Deleted

Text Deleted
"Marketing Plan"

Graphic Element Deleted

Graphic Element Deleted

Graphic Element Deleted

Text Deleted
"1 2"

Text Replaced
[Old]: "restrict the freedom of action or the discretion of the operator." Id. ¶ 2.2.6. 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 TNR alleges that Playboy was "in a position of significant control over TNR's use of Playboy's mark" pursuant to the PLA. FAC ¶ 115. TNR was required to obtain "prior approval from Playboy" for marketing materials in Playboy's specified format, to" follow the approved marketing plan," to "affix Playboy's official holograms to the Products" and to allow Playboy to audit its books twice a year. FAC ¶¶ 25–29. TNR does not allege that Playboy required TNR to abide by a marketing plan that Playboy created or that Playboy marketed "availab[ility] of a successful market plan" to induce TNR's novation of the PLA. Cf. Release ¶ 2.2.3. While these facts show that Playboy had some control over TNR's marketing activities, the Court cannot find that these allegations reasonably suggest the existence of a franchise relationship. According to the Commissioner, courts must consider allegations of control "in light of applicable principles of general law and of customs prevailing in the particular trade or industry." Release ¶ 2.2.4. Playboy argues that these controls are common features of licensing agreements and cites Hollywood Athletic Club Licensing Corp. v. GHAC–CityWalk, 938 F. Supp. 612, 615 (C.D. Cal. 1996) for the proposition that a licensor must retain some level of control over their intellectual property to avoid the risk of abandonment. See Mot. 10–11. Even indulging even 26 27 28 -13-"
[New]: "9 Here, TNR claims that between November 2019 and August 31, 2021, TNR 10 converted monies "exceeding $497.860.75" that full "total of which can be 11 ascertained and confirm by third-party invoices." FAC ¶¶ 207. This allegation cannot 12 form the basis of a conversion action because TNR has failed to allege the conversion 13 of a specific sum of money. According to Welco, which TNR's cites with approval, 14 "[a] plaintiff must specifically identify the amount of money converted. 223 Cal. 15 App. 4th at 217. In this case, stating that the amount "exceed[s] $497.860.75" does"

Comments from page 10 continued on next page

interest requires three elements: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKx)2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019) (quoting *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003)). "Money may be the subject of conversion if the claim involves a specific, identifiable sum; it is not necessary that each coin or bill be earmarked." *Welco*, 223 Cal. App. 4th at 209.

Here, TNR claims that between November 2019 and August 31, 2021, TNR converted monies "exceeding $497,860.75" that full "total of which can be ascertained and confirm by third-party invoices." FAC ¶¶ 202. This allegation cannot form the basis of a conversion action because TNR has failed to allege the conversion of a specific sum of money. According to *Welco*, which TNR's cites with approval, "[a] plaintiff must specifically identify the amount of money converted." 223 Cal. App. 4th at 217. In this case, stating that the amount "exceed[s] $497,860.75" does not properly plead a specific dollar amount. FAC ¶ 207. Federal courts have previously dismissed conversion claims where the plaintiff fails to plead a definite sum. *E.g., Mami Nutraceuticals, LLC v. Nat'l Merch. Ctr., Inc.*, No. SACV1601308JVSJCGX, 2017 WL 3081823, at *6 (C.D. Cal. June 9, 2017) ("In this case, stating the amount withheld as over $500,000 does not properly plead a specific dollar amount …") (citing *Baxter v. King*, 23 P. 172, 172 (Cal. Dist. Ct. App. 1927)); *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-CV-00155-BAS DHB, 2015 WL 1013704, at *9–10 (S.D. Cal. Mar. 9, 2015) (dismissing conversion claim based on overcharges "in excess of $160,000" because the "dispute is more akin to a dispute over a bill than it is to outright theft" and "a failure to pay money owed or claims arising out of an alleged simple overcharge cannot be the basis for a conversion".). On this basis, the Court finds that dismissal of TNR's conversion claim is warranted.

### E. TNR's UCL Claim Fails

TNR claims that Playboy is liable for engaging in unfair business practices in violation of UCL § 17200. FAC ¶¶ 157–166. Playboy argues this claim is not cognizable because TNR's other claims demonstrate that it possesses adequate remedies and therefore TNR cannot plead a necessary element of a UCL claim. Mot. 24–25. TNR resists this conclusion, citing its request for restitutionary disgorgement, which is a "separate and independent from the contract and tort damages TNR seeks elsewhere." Resp. 24–25 (citing FAC ¶ 166). The Court is persuaded that TNR has failed to adequately plead that lack an adequate remedy at law and dismisses the UCL claim on this basis.

To state a claim under the UCL, the plaintiff must adequately plead "that [it] lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839–44 (9th Cir. 2020) (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). "Courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole." *Franckowiak v. Scenario Cockram USA, Inc.*, No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2 (C.D. Cal. Nov. 30, 2020) (Walter, J.). A failure to plead the "the basic requisites" of its UCL claim is grounds for dismissal. *Sonner*, 971 F.3d at 839; *see, e.g., id.* ("[U]nder *Sonner*, plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law."); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) (dismissing UCL claim because "Plaintiffs do not plead that they have inadequate remedies at law … or otherwise distinguish their request for restitution from their request for damages.").

At no point in their operative pleadings does TNR plead a lack of adequate legal remedy. *See generally* FAC. *Sonner* teaches that courts should dismiss UCL claim where plaintiffs fail to plead a lack of adequate remedies. *Franckowiak*, No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2. Instead, TNR suggests that Playboy must demonstrate the inadequacy of its remedies. *See* Resp. 24. Not so. As

Page: 11

Text Replaced

[Old]: "was required to obtain Playboy's approval for marketing materials and new product offerings, these rights, without more, are best understood as a Playboy's attempt, as licensor, to retain sufficient control over its mark, which TNR agrees constitutes valuable property. See FAC Ex. 1, ¶¶ 2(b)(i),(h). Accordingly, as TNR has failed adequately plead the existence of franchise relationship, the Court dismisses the first and second causes of action. B. TNR's Interference Claims Fail TNR brings claims for intentional interference with contractual relations, intentional interference with prospective economic relations, and negligent interference with prospective economic relations. FAC ¶¶ 167–198. Playboy argues that these claims fail as a 3 4 5 6 7 8 9 10 11 12 13 14 15 16 matter of law because (1) they are barred by the economic 17 18 19 20 21 22 23 24 25 loss doctrine, (2) Playboy cannot be liable for interference with contracts that it has an interest in, and (3) TNR has failed to allege that Playboy committed a wrongful act. Mot. 15–20. TNR argues that Playboy ignores key allegations wherein TNR "plainly alleges additional wrongful conduct by Playboy, which is separate and independent of Playboy's breaches of the PLA." Resp. 21. The Court is not persuaded that TNR's pleadings pass muster. To state a claim for intentional interference with prospective economic advantage, a plaintiff must adequately plead: (1) an economic relationship between the 26 27 28 -15-"

[New]: "E. TNR's UCL Claim Fails TNR claims that Playboy is liable for engaging in unfair business practices in violation of UCL § 17200. FAC ¶¶ 157–166. Playboy argues this claim is not cognizable because TNR's other claims demonstrate that it possesses adequate remedies and therefore TNR cannot plead a necessary element of a UCL claim. Mot. 24–25. TNR resists this conclusion, citing its request for restitutionary disgorgement, which is a "separate and independent from the contract and tort damages TNR seeks elsewhere." Resp. 24–25 (citing FAC ¶ 166). The Court is persuaded that TNR has failed to adequately plead that lack an adequate remedy at law"

Font "CourierNewPSMT" changed to "TimesNewRomanPS-BoldMT".

Text Replaced

[Old]: "plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29, 63 3 4 5 6 7 8 9 P.3d 937 (2003). 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 A claim for negligent interference with prospective economic advantage has the same elements as an intentional interference claim except that, instead of an intentional act, the third element requires that the defendant had knowledge that the relationship would be disrupted if the defendant failed to act with reasonable care and that the defendant failed to act with reasonable care. See Redfearn v. Trader Joe's Co., 20 Cal. App. 5th 989, 1005 (2018); see also Crown Imports, LLC v. Superior Court, 223 Cal. App. 4th 1395, 1404 n.10 (2014) ("The difference between intentional interference and negligent interference with prospective economic advantage relates to the defendant's intent"). To state a claim for interference with prospective economic advantage, a plaintiff must adequately plead that the defendant "not only interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Della Penna v. Toyota Motor Sales, USA, Inc., 26 27 28 -16-"

[New]: "and dismisses the UCL claim on this basis. 3 4 5 6 7 8 9 10 11 To state a claim under the UCL, the plaintiff must adequately plead "that [it] 12 lacks an adequate remedy at law." Sonner v. Premier Nutrition Corp., 971 F.3d 834,"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Graphic Element Deleted

Text Deleted

"1 2"

Graphic Element Deleted

Graphic Element Deleted

Text Replaced

[Old]: "1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25"

[New]: "13 839–44 (9th Cir. 2020) (citing O'Shea v. Littleton, 414 U.S. 488, 502 (1974)). "Courts 14 generally require plaintiffs seeking equitable relief to allege some facts suggesting 15 that damages are insufficient to make them whole." Franckowiak v. Scenario 16 Cockram USA, Inc., No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2 (C.D. 17"

Graphic Element Deleted

Text Replaced

[Old]: "11 Cal. 4th 376, 393 (1995). For an act to be sufficiently independently wrongful, it must be "unlawful, that is, … it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Korea Supply Co., 29 Cal.4th at 1159; Drink Tank Ventures LLC v. Al Bottles, 71 Cal. App. 5th 528, 539 (2021) (The requirement of independently wrongful conduct "sensibly redresses the balance

Comments from page 11 continued on next page

### E. TNR's UCL Claim Fails

TNR claims that Playboy is liable for engaging in unfair business practices in violation of UCL § 17200.  FAC ¶¶ 157–166.  Playboy argues this claim is not cognizable because TNR's other claims demonstrate that it possesses adequate remedies and therefore TNR cannot plead a necessary element of a UCL claim.  Mot. 24–25.  TNR resists this conclusion, citing its request for restitutionary disgorgement, which is a "separate and independent from the contract and tort damages TNR seeks elsewhere."  Resp. 24–25 (citing FAC ¶ 166).  The Court is persuaded that TNR has failed to adequately plead that lack an adequate remedy at law and dismisses the UCL claim on this basis.

To state a claim under the UCL, the plaintiff must adequately plead "that [it] lacks an adequate remedy at law."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839–44 (9th Cir. 2020) (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).  "Courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole."  *Franckowiak v. Scenario Cockram USA, Inc.*, No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2 (C.D. Cal. Nov. 30, 2020) (Walter, J.).  A failure to plead the "the basic requisites" of its UCL claim is grounds for dismissal.  *Sonner*, 971 F.3d at 839; *see, e.g., id.* ("[U]nder *Sonner*, plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law."); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) (dismissing UCL claim because "Plaintiffs do not plead that they have inadequate remedies at law … or otherwise distinguish their request for restitution from their request for damages.").

At no point in their operative pleadings does TNR plead a lack of adequate legal remedy.  *See generally* FAC.  *Sonner* teaches that courts should dismiss UCL claim where plaintiffs fail to plead a lack of adequate remedies.  *Franckowiak*, No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2.  Instead, TNR suggests that Playboy must demonstrate the inadequacy of its remedies.  *See* Resp. 24.  Not so.  As

-11-
[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

between providing a remedy for predatory that is, wrongful economic behavior' (on one hand) and keeping legitimate business competition outside litigative bounds (on the other))." "[T]he essential nature of the conduct determines whether the action sounds in contract or in tort." JRS Prods., Inc. v. Matsushita Elec. Corp. of Am., 115 Cal. App. 4th 168, 182 (2004); see also JRS Prods., 115 Cal. App. 4th at 182 ("[T]he analysis of the conduct, not the duty" determines "the appropriate cause of action."). After careful consideration of the pleadings in the light most favorable to TNR, the Court finds that the gravamen of this action sounds in contract. In the complaint, TNR alleges that Playboy engaged in conduct that violated the PLA. The PLA and Playboy's alleged breach thereof are the leitmotif of the complaint. See FAC ¶¶ 1–2, 10–17, 19–28, 34–38, 44, 82–91, 92–106, 107–112, 146–156. Looking at the conduct giving rise to TNR's claims as required by JRS Products, the Court finds that the allegations in the complaint do not plausibly suggest 26 27 28 -17-"
[New]: "Cal. Nov. 30, 2020) (Walter, J.). A failure to plead "the basic requisites" of its 18 UCL claim is grounds for dismissal. Sonner, 971 F.3d at 839; see, e.g., id. ("[U]nder 19 Sonner, plaintiffs are required, at a minimum, to plead that they lack an adequate"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Graphic Element Deleted

Text Replaced
[Old]: "1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21"
[New]: "20 remedy at law."); In re Cal. Gasoline Spot Mkt. Antitrust Litig., No. 20-cv-03131 21 JSC, 2021 WL 1176645, at *7 (N.D. Cal."

Graphic Element Deleted

Text Inserted
"29, 2021) (dismissing UCL claim 22 because "Plaintiffs do not plead that they have inadequate remedies at law … or 23 otherwise distinguish their request for restitution from their request for damages."). 24 25 At no point"

Text Inserted
"Mar."

Text Replaced
[Old]: "that Playboy engaged in "independently wrongful conduct" that can be disentangled from TNR's contractual claims. To the extent Playboy has harmed TNR, TNR's remedies arise from contract law. By way of illustration, TNR complains that Playboy improperly competed with TNR's business. See, e.g., FAC ¶ 59. Such conduct, if true, could potentially violate the exclusive license TNR was granted under the PLA. Similarly, TNR alleges that it was harmed because Playboy improperly withheld approval over marketing materials and products. See, e.g., FAC ¶¶ 84–86, 115, 117, 183. These allegations, if true, could potentially constitute a violation of Playboy's implied duties under the PLA. See"
[New]: "in their operative pleadings does TNR plead a lack of adequate legal remedy. See generally FAC. Sonner teaches that courts should dismiss UCL"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Annotation Deleted

Text Replaced
[Old]: "Kendall v. Ernest Pestana, 40 Cal. 3d 488, 501 (1985). Indeed, TNR expressly asserts this conduct in support of its claim for a breach of the implied covenant of good faith and fair dealing. See FAC ¶ 155(d). Further, TNR complains that Playboy improperly requested reimbursements for expenses that were not authorized. See, e.g., FAC ¶¶ 69, 155, 160, 173, 205. A fair reading of the complaint suggests that these payments were made by TNR to Allen pursuant to the terms of the licensing agreement. FAC ¶ 211(Playboy knew or had reason to know that the payments Freedom sent to Playboy actually belonged to TNR) (emphasis added). Given that TNR's allegations suggest potential violations of the licensing agreement that governs the relationship between Allen, TNR, and Playboy, the Court is unable to find that 26 27 28 -18-"
[New]: "claim where plaintiffs fail to plead a lack of adequate remedies. Franckowiak, No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2. Instead, TNR suggests that Playboy must demonstrate the inadequacy of its remedies. See Resp. 24. Not so. As 26 27 28 -11-"

Font "CourierNewPS-ItalicMT" changed to "TimesNewRomanPSMT".



1  plaintiff, TNR—not Playboy—has the burden of pleading "the basic requisites" of its

2  UCL claim. *Sonner*, 971 F.3d at 844.

3      Accordingly, as TNR has failed to allege a necessary element for a UCL claim,

4  the Court dismisses the eleventh cause of action.

5     **II.**      **CONCLUSION**

6      For the reasons herein, the Court grants Playboy's Motion and dismisses

7  TNR's claims for violations of the franchise laws, tortious interference with actual

8  and prospective economic relations, fraudulent inducement, conversion, and unfair

9  competitive practices.

10     **SO ORDERED.**

11

12

13            **THE HON. JOHN F. WALTER**

14          **UNITED STATES DISTRICT JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-12-

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

**Page: 12**

**Text Replaced**
[Old]: "TNR has pleaded the existence of an independently wrongful act sufficiently. See, e.g., JRS Products, 115 Cal. App. 4th at 182; Korea Supply., 29 Cal. 4th at 1150; State Ready Mix, Inc. v. Moffatt & Nichol, 232 Cal. App. 4th 1227, 1232 (2015) ("[Plaintiff] cannot recast [its] complaint for breach of contract/breach of warranty as a tort action. 'A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.'") (quoting Aas v. SuperiorCourt, 24 Cal. 4th 627, 643 (2000), superseded by statute on other grounds)). Accordingly, the Court concludes that TNR has failed to state claims for intentional interference with prospective economic advantage and negligent interference with economic advantage and, thus, TNR's sixth, seventh, and eighth causes of action are dismissed. 3 4 5 6 7 8 9 10 11 12 13 14 15 16 C. TNR Fails To State a Claim For Fraudulent 17 18 19 20 21 22 23 24 25 Inducement TNR claims that Playboy is liable for fraudulently inducing its assent to the Eighth Amendment. FAC ¶¶ 199– 203. Playboy demurrers, arguing TNR's allegations fail to state a claim for fraudulent inducement under well-settled law. Mot. 21–22. The Court agrees with Playboy and therefore dismisses TNR's claim for fraudulent inducement. "A claim for fraud in the inducement requires the following elements: '(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce 26 27 28 -19-"
[New]: "plaintiff, TNR—not Playboy—has the burden of pleading "the basic requisites" of its UCL claim. Sonner, 971 F.3d at 844. Accordingly, as TNR has failed to allege a necessary element for a UCL claim, the Court dismisses the eleventh cause of action."

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

**Annotation Deleted**

**Graphic Element Deleted**

**Text Deleted**
"1 2 reliance; (d) justifiable reliance; and (e) resulting damage.'" McColgan v."

**Text Deleted**
"Mutual of Omaha Ins. Co., 4 F. Supp. 3d 1228 1233 (E.D. Cal. 2014) (quoting Hinesley v. Oakshade Town Ctr., 135 Cal. App. 4th 289, 294 (2005)). "Justifiable reliance in a fraud action is ordinarily a question of fact, '[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion." Id. (quoting"

**Text Replaced**
[Old]: "Blankenheim v. E.F. Hutton & Co., 217 Cal.App.3d 1463, 1475 (1990)). TNR's complaint fails to show that it justifiably relied on Playboy's representations as an inducement to signing the Eighth Amendment. TNR alleges that the PLA "clearly grant[ed] TNR a license to ... CBD condoms and lubricants." FAC ¶ 49. TNR alleges that its CEO, Khun Amorn, signed the Eighth Amendment, pursuant to which it lost its license to CBD condoms and lubricants. TNR reasons that Playboy prevented Khun Amorn from seeking or obtaining legal counsel prior to signing [Eighth Amendment]" by falsely claiming that the amendment was urgently needed. But TNR's account does not show that Khun Amorn justifiably relied on Playboy's representations. There is no suggestion that Playboy 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 prevented or discouraged Khun Amorn from seeking counsel or that Playboy indicated that the "urgency" of the situation would not allow time to do so. See FAC ¶ 51– 54. Similarly, TNR does not suggest that Playboy concealed the clear, unambiguous terms of the Eighth Amendment. 26 27 28 -20-"
[New]: "3 4 5 II. CONCLUSION 6 7 8 9 For the reasons herein, the Court grants Playboy's Motion"

Font "CourierNewPS-ItalicMT" changed to "TimesNewRomanPSMT".

**Graphic Element Deleted**

**Graphic Element Deleted**

**Text Deleted**
"1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19"

**Text Replaced**
[Old]: "Under California law, it is well settled that a court may consider an individual's 'knowledge, experience and competence" in assessing whether reliance is justifiable. In re Kirsh, 973 F.2d 1454, 1461 (9th Cir. 1992). Here, TNR alleges it is an international manufacturing company that has been publicly traded on the Thailand stock exchange since 2016 that invested "tens of millions" of dollars into its relationship with Playboy. FAC ¶¶ 10, 1. Khun Amorn serves as TNR's Chief Operating Officer, FAC ¶ 44, and thus his conduct must be assessed against this backdrop. First, the Court is not persuaded that Playboy prevented Khun Amorn from obtaining the advice of counsel by claiming that the Eighth Amendment should be executed urgently. Simply stated, it is not plausible that the CEO of an internationally traded company would modify an agreement worth tens of millions of dollars without obtaining the advice of counsel simply because the counter-party claims that it was urgent. Holding Khun 20 21 22 23 24 25 Amorn to this standard is consistent with California's applicable jurisprudence. For instance, in In re Kirch, the Ninth"

Comments from page 12 continued on next page



1   plaintiff, TNR—not Playboy—has the burden of pleading "the basic requisites" of its

2   UCL claim. *Sonner*, 971 F.3d at 844.

3       Accordingly, as TNR has failed to allege a necessary element for a UCL claim,

4   the Court dismisses the eleventh cause of action.

5   **II.**     **CONCLUSION**

6       For the reasons herein, the Court grants Playboy's Motion, and dismisses

7   TNR's claims for violations of the franchise laws, tortious interference with actual

8   and prospective economic relations, fraudulent inducement, conversion, and unfair

9   competitive practices.

10    **SO ORDERED.**

13           THE HON. JOHN F. WALTER

14           UNITED STATES DISTRICT JUDGE

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Circuit applied California law and found that it was unreasonable for an attorney to avoid obtaining a title report in a transaction for real property based on the counter-parties representation that a title report was not necessary."
[New]: "and dismisses TNR's claims for violations of the franchise laws, tortious interference with actual and prospective economic relations, fraudulent inducement, conversion, and unfair competitive practices"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Graphic Element Deleted

Text Deleted
"publicly traded company's Chief Operating Officer would 26 27 28 -21-"

Text Deleted
"1992). Similarly, the Court is not persuaded that a"

Text Deleted
"In re Kirsh, 973 F.2d 1454, 1461 (9th Cir."

Annotation Deleted

Annotation Deleted

Annotation Deleted

Graphic Element Deleted

Text Replaced
[Old]: "1 2 3 4 5 6 7 8 9 10"
[New]: "10 SO ORDERED."

Graphic Element Inserted

Text Inserted
"THE HON. JOHN F. WALTER UNITED STATES DISTRICT JUDGE"

Annotation Deleted

Graphic Element Deleted

Annotation Deleted

Text Deleted
"modify a licensing agreement of strategic importance based"

Text Replaced
[Old]: "on Allen's word alone. Id. Rosenthal v. Great Western Fin. Securities Corp., 14 Cal. 4th 394, 415 (1996) supports this conclusion. In Rosenthal, plaintiffs sought to void arbitration agreements by claiming that the defendant obtained their assent by misrepresenting the terms of the agreement. 14 Cal. 4th at 403. The court held that a group of differently-abled plaintiffs justifiably relied on the representations and thus could pursue a claim, but that the reliance by other differently situated plaintiffs was not justifiable. See id. at 424–432. The different treatment is evident in the opinion. The former were not proficient in English and included an 80-year-old plaintiff with Alzheimer's, a plaintiff that was "legally blind," and a plaintiff that was 81-year-old who had immigrated from Italy and could not "read English at all." See id. at 427–431. The court distinguished this group from the plaintiffs whose reliance were was not justifiable—i.e., Floyd Allen and Ruby Rosenthal— reasoning the latter lacked cognizable because their allegations "d[id] not establish" that they "lacked a reasonable opportunity to learn the character of the documents they signed. Id. at 425. Nothing in the complaint suggests that Khun Amorn can be fairly compared to the plaintiffs in Rosenthal that stated plausible claims for fraudulent inducement. There is no suggestion that Khun Amorn possesses limited 26 27 28 -22-"
[New]: "26 27 28 -12-"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".



Page: 13

1  DATED: May 11, 2022        QUINN EMANUEL URQUHART &
2                             SULLIVAN, LLP
3
4
5
6  By
7     MARSHALL M. SEARCY III
8     Attorneys for Defendants Playboy
9     Enterprises International, Inc. and
10    Products Licensing LLC
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-13-
[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Graphic Element Deleted

Text Deleted
"faculties, could not understand the terms of the Eighth Amendment, or was unduly influenced by Playboy."

Text Replaced
[Old]: "Thus, there is no basis to find that TNR's claim is cognizable. Moreover, Khun Amorn's alleged lack of familiarity with the operative agreement is no excuse for signing it without seeking counsel. California courts routinely look to the Restatement (Second) of Torts. See, e.g., In re Kirsh, 973 F.2d at 1461. In Kirsh, the Ninth Circuit quoted the Restatements to explain why an experienced individual could not show justifiable reliance in the context of a real estate transaction."
[New]: "DATED: May 11, 2022 QUINN EMANUEL URQUHART & SULLIVAN, LLP"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Image Inserted

Text Inserted
"By"

Graphic Element Inserted

Text Replaced
[Old]: "11 12 13 14 15 16 [I]f one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. 17 18 19 20 21 22 23 24 25 Id. (quoting Restatement (Second) of Torts § 541 cmt a. (1977)). That principle supports dismissal of TNR's fraudulent inducement claim. TNR does not allege facts suggest that Khun Amorn, a CEO of a publicly-traded company, reasonably and justifiably relied on Playboy's representations. Accordingly, the Court dismisses this claim. D. TNR's Conversion Claim Fails TNR claims that Playboy is liable for conversion because it "usurped" TNR's resources. FAC ¶¶ 204–213. Playboy contends that TNR's conversion claim fails because it had not identifiable a definite sum of money, an 26 27 28 -23-"
[New]: "MARSHALL M. SEARCY III Attorneys for Defendants Playboy Enterprises International, Inc.,"

Graphic Element Deleted

Text Deleted
"1 2"

Graphic Element Deleted

Text Replaced
[Old]: "essential element for claims arising from the conversion of money, and separately that it is barred by the economic loss doctrine. TNR responds that it had adequately alleged conversion of a "specific and identifiable sum" of money and that the conversion claim arises from wrongful conduct that is "separate and apart from Playboy's breach of the PLA." Resp. 23–24. The Court agrees with Playboy. 3 4 5 6 7 8 Conversion is the wrongful exercise of dominion over 9 the property of another. Welco Elecs., Inc. v. Mora, 223 10 Cal. App. 4th 202, 208 (2014). "The elements of a 11 conversion claim are: (1) the plaintiff's ownership or 12 right to possession of the property; (2) the defendant's 13 conversion by a wrongful act or disposition of property 14 rights; and (3) damages." Id. (internal quotations 15 omitted). A convertible property interest requires three 16 elements: "First, there must be an interest capable of 17 precise definition; second, it must be capable of 18 exclusive possession or control; and third, the putative 19 owner must have established a legitimate claim to 20 exclusivity." Monster Energy Co. v. Vital Pharms., Inc., 21 No. EDCV 18-1882 JGB (SHKx)2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019) (quoting Kremen v. Cohen, 337 F.3d 1024, 1030 (9th Cir. 2003)). "Money may be the subject of conversion if the claim involves a specific, 22 23 24 25 26 identifiable sum; it is not necessary that each coin or 27 bill be earmarked." Welco, 223 Cal. App. 4th at 209. 28 -24-"
[New]: "and Products Licensing"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".

Text Deleted
"Here, TNR claims that between November 2019 and August 1 31, 2021, TNR converted monies "exceeding $497,860.75" 2 that full "total of which can be ascertained and confirm 3 by third-party invoices." FAC ¶ 207. This allegation 4 cannot form the basis of a conversion action because TNR 5 has failed to allege the conversion of a specific sum of 6 money. According to Welco, which TNR's cites with 7 approval, "[a]"

Comments from page 13 continued on next page



1  DATED:  May 11, 2022          QUINN EMANUEL URQUHART &
2                                SULLIVAN, LLP

3

4

5

6  By

7     MARSHALL M. SEARCY III
8     Attorneys for Defendants Playboy
9     Enterprises International, Inc. and
10    Products Licensing LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

plaintiff must specifically identify the 8 amount of money converted. 223 Cal. App. 4th at 217. In 9 this case, stating that the amount "exceed[s] $497,860.75" 10 does not properly plead a specific dollar amount. FAC ¶ ¶ 207. Federal courts have previously dismissed 12 conversion claims where the plaintiff fails to plead a 13 definite sum. E.g., Mami Nutraceuticals, LLC v. Nat'l 14 Merch. Ctr., Inc., No. SACV1601308JVSJCGX, 2017 WL 15 3081823, at *6 (C.D. Cal. June 9, 2017) ("In this case, 16 stating the amount withheld as over $500,000 does not 17 properly plead a specific dollar amount ...") (citing Baxter 18 v. King, 23 P. 172, 172 (Cal. Dist. Ct. App. 1927)); 19 Worldwide Travel, Inc. v. Travelmate US, Inc., No. 14-CV 20 00155-BAS DHB, 2015 WL 1013704, at *9–10 (S.D. Cal. Mar. 21 9, 2015) (dismissing conversion claim based on overcharges 22 "in excess of $160,000" because the "dispute is more akin 23 to a dispute over a bill than it is to outright theft" 24 and "a failure to pay money owed or claims arising out of 25 26 an alleged simple overcharge cannot be the basis for a 27 conversion claim".). On this basis, the Court finds that 28 dismissal of TNR's conversion claim is warranted. -25-"

🔖 Graphic Element Deleted

🔖 Graphic Element Deleted

🔖 Graphic Element Deleted

🔖 Text Deleted
"Separately, the Court notes that a conversion action 1 is an inappropriate vehicle for TNR to seek redress for 2 contractual violations. At bottom, TNR's claim for 3 conversion arises from reimbursement invoices that were 4 submitted by Allen and paid to Allen under the terms of 5 the operative licensing agreement. See FAC ¶ 207. To 6 the extent that Playboy and/or Allen overbilled TNR, such 7 conduct would give rise to a contractual breach. Baggett 8 v Hewlett–Packard Co., No. SACV 07–0667 AG (RNBx), 2009 9 WL 3178066, at *2 (C.D. Cal. Sep. 29, 2009). The economic 10 loss doctrine prohibits TNR from predicating its 11 conversion claim "on a mere breach of contract." Cusano 12 v. Klein, 280 F. Supp. 2d 1035, 1043 (C.D. Cal. 2003). 13 Application of the economic loss rule is appropriate here 14 to "prevent[s] the law of contract and the law of tort 15 from dissolving one into the other." Robinson Helicopter 16 Co. v. Dana Corp., 34 Cal. 4th 979, 988 (2004) (quoting 17 Rich Prod. Corp. v. Kemutec, Inc., 66 F. Supp. 2d 937, 18 969 (E.D. Wis. 1999), aff'd, 241 F.3d 915 (7th Cir. 19 2001)); accord Drink Tank, 71 Cal. App. 5th at 539 ("A bare"

🔖 Graphic Element Deleted

🔖 Text Replaced
[Old]: "breach of contract, without more, is not tortious ...."). 21 Accordingly, as TNR has failed to state a claim for 22 conversion, the Court dismisses the tenth cause of action. 23 E. UCL Claims Fails Because It Has Failed To Allege 24 The Lack of Adequate Remedies TNR claims that Playboy is 25 liable for engaging in unfair business practices in 26 violation of UCL § 17200. FAC ¶ ¶ 157–166. Playboy 27 argues this claim is not 25 26 27 28 -26-"
[New]: "21 22 23 24 25 26 27 28 -13-"

Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".



## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2022, I electronically filed this **[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** using the CM/ECF system which will send notification of such to all parties. I also certify the document was served via U.S. Mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access the document through the CM/ECF system.

By:  /s/ Marshall Searcy

Marshall Searcy

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Page: 14

Graphic Element Deleted

Text Deleted
"1"

Graphic Element Deleted

Text Replaced
[Old]: "cognizable because TNR's other claims demonstrate that it possesses adequate remedies and therefore TNR cannot plead a necessary element of a UCL claim. Mot. 24–25. TNR resists this conclusion, citing its request for restitutionary disgorgement, which is a "separate and independent from the contract and tort damages TNR seeks elsewhere." Resp. 24–25 (citing FAC ¶ 166). The Court is persuaded that TNR has failed to adequately plead that lack an adequate remedy at law and dismisses the UCL claim on this basis. 3 4 5 6 7 8 9 10 To state a claim under the UCL, the plaintiff must 11 adequately plead "that [it] lacks an adequate remedy at 12 law." Sonner v. Premier Nutrition Corp., 971 F.3d 834, 13 839–44 (9th Cir. 2020) (citing O'Shea v. Littleton, 414 14 U.S. 488, 502 (1974)). "Courts generally require 15 plaintiffs seeking equitable relief to allege some facts 16 suggesting that damages are insufficient to make them 17 whole." Franckowiak v. Scenario Cockram USA, Inc., No. 18 CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2 (C.D. Cal. 19 Nov. 30, 2020) (Walter, J.). A failure to plead the "the 20 basic requisites" of its UCL claim is grounds for 21 dismissal. Sonner, 971 F.3d at 839; see, e.g., 22 ("[U]nder Sonner, plaintiffs are required, at a minimum, 23 to plead that they lack an adequate remedy at law."); In 24 re Cal. Gasoline Spot Mkt. Antitrust Litig., No. 20-cv 25 26 03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 27 2021) (dismissing UCL claim because "Plaintiffs do not 28 plead that they have inadequate remedies at law … or -27-"
[New]: "CERTIFICATE OF SERVICE"

Font "CourierNewPSMT" changed to "TimesNewRomanPS-BoldMT".

Text Deleted
"Accordingly, as TNR has failed to allege a necessary element for a UCL claim, the Court dismisses the eleventh cause of action. 3 4 IV. CONCLUSION 5 6 7 8 9 For the reasons herein, the Court grants Playboy's Motion and dismisses TNR's claims for violations of the franchise laws, tortious interference with actual and prospective economic relations, fraudulent inducement, conversion, and unfair competitive claims 10 SO ORDERED. 11 12 13 14"

Text Deleted
"1 2"

Graphic Element Deleted

Text Deleted
"Sept. 9, 2020) (dismissing the plaintiff's UCL and CLRA claims with prejudice because the plaintiff failed to allege that he lacked an adequate remedy at law) 26 27 28 -28-"

Text Deleted
"No.: CV 20-00769-CJC(GJSx), 2020 WL 5492990 (C.D. Cal."

Text Deleted
"Gibson v. Jaguar Land Rover North America, LLC,"

Text Deleted
"otherwise distinguish their request for restitution from 1 their request for damages."). 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 At no point in their operative pleadings does TNR plead a lack of adequate legal remedy. See generally FAC. Sonner teaches that courts should dismiss UCL claim where plaintiffs fail to plead a lack of adequate remedies. Franckowiak, No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2. Instead, TNR suggests that Playboy must demonstrate the inadequacy of its remedies. See Resp. 24. Not so. As plaintiff, TNR—not Playboy—has the burden of pleading "the basic requisites" of its UCL claim. Sonner, 971 F.3d at 844. In conclusory fashion, TNR cites its request for "restitutionary disgorgement" to show that it lacks an adequate remedy. But TNR does not allege at any point that its other remedies are inadequate or attempt to explain why restitutionary disgorgement is necessary. And TNR's conclusory assertion that its remedies are inadequate is no substitute for factual allegations that support a plausible claim for relief. See Franckowiak, No. CV 20-8569-JFW(PVCX), 2020 WL 9071697, at *2 (dismissing UCL claim because "plaintiffs cannot persuasively argue that they lack an adequate remedy at law");"

Graphic Element Deleted

Annotation Deleted

Annotation Deleted

Comments from page 14 continued on next page



**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of May, 2022, I electronically filed this **[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** using the CM/ECF system which will send notifications of such to all parties. I also certify the document was served via U.S. Mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access the document through the CM/ECF system.

By:   */s/ Marshall Searcy*

Marshall Searcy

-14-

[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Annotation Deleted
Graphic Element Deleted
Graphic Element Deleted
Text Deleted
"THE HON. JOHN F. WALTER UNITED STATES DISTRICT JUDGE 15 16 17 18 19 20 21 22 23 24 25 26 27 28 -29-"
Graphic Element Attributes Changed
Text Deleted
"2"
Text Deleted
"CERTIFICATE OF SERVICE"
Text Deleted
"1"
Text Deleted
"By"
Graphic Element Deleted
Graphic Element Deleted
Text Deleted
"2"
Text Deleted
"DATED: May 11, 2022 QUINN EMANUEL URQUHART & SULLIVAN, LLP"
Graphic Element Deleted
Text Attributes Changed
Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".
Image Deleted
Graphic Element Deleted
Text Deleted
"MARSHALL M. SEARCY III Attorneys for Defendants Playboy Enterprises International, Inc., and Products Licensing LLC 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 -30-"
Text Deleted
"10 11"
Text Deleted
"3 4 5 6 7 8 9 10 11 12 13"
Text Attributes Changed
Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".
Text Replaced
[Old]: "14"
[New]: "12"
Text Attributes Changed
Font "CourierNewPSMT" changed to "TimesNewRomanPSMT".
Text Inserted

Comments from page 14 continued on next page

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of May, 2022, I electronically filed this **[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** using the CM/ECF system which will send notification of such to all parties. I also certify the document was served via U.S. Mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access the document through the CM/ECF system.

By:  */s/ Marshall Searcy*

Marshall Searcy

-14-